[No. 5-40008-2.    Division Two.    September 23, 1969.]

HELENE JOYCE PESTE, *Appellant,* v. FRED G. PESTE, *Respondent.*

*Owen P. Hughes* (of *Neal, Bonneville, Hughes & Viert*), for appellant.

*B. Franklin Heuston,* for respondent.

PEARSON, J.—This is an action seeking to set aside a property settlement agreement and a part of the divorce decree which confirmed the settlement. The decree was entered by default on May 2, 1958.

This action was commenced by appellant, Helene Joyce Peste, on June 10, 1965. She had been the defendant in the divorce action.

In her complaint plaintiff claims several theories for the equitable relief sought: (1) that the defendant or his attorney had fraudulently misrepresented the value of the community assets; (2) that the defendant had exercised undue influence over her; and (3) that the court was defrauded by the failure of defendant to introduce testimony as to the value of the community assets.

Plaintiff claimed as an alternative theory that if there was not actual fraud proven, the "wrong" against her, arising from the disproportionate division of the property, gave rise to a constructive trust in her favor.

Defendant denied these allegations of wrongdoing and asserted the statute of limitations (RCW 4.16.080(4)) and laches as a defense.

The trial consumed some 6 days of conflicting testimony concerning the circumstances surrounding the execution of the property settlement agreement and the circumstances leading up to that event. At the conclusion of the evidence, the trial court entered findings of fact and conclusions of law and judgment dismissing the action.

Specifically, the court found that despite the large disparity between the assets received by the defendant as compared to that which plaintiff received in the settlement, there was no fraud or undue influence, and that the agreement "was entered into by both parties in good faith after

their rights had been explained and at a time when all of the material facts were known to both of them." The trial court also concluded that the disparity in the settlement was not such as would raise a constructive trust and finally, that the action was barred by the statute of limitations.

Plaintiff has assigned as error portions of 10 of the trial court's findings of fact, and the failure of that court to enter 13 of plaintiff's proposed findings. She concedes, however, that her appeal cannot be based upon challenging the trial court's resolution of disputed factual issues, but must be grounded, if at all, in the proposition that a property settlement agreement *must* be set aside where the award to the wife is substantially less than the award to the husband, even though no element of wrongdoing has entered into its execution. It is to this issue and the related statute of limitations problem that we focus our attention.

The parties to this action were married on February 6, 1934. At the time of the divorce, May 2, 1958, two of their three daughters were married adults. The youngest, age 18, was a senior in high school.

At this time all of their property was community property. Aside from the home, furnishings, bank accounts, insurance, and automobiles, the principal asset of the community was an undivided one-half interest in a partnership, doing business as Douglas Fir Christmas Tree Company. While the trial court made no finding as to the value of these assets, the defendant conceded by stipulation at the trial that the value of the community interest in the partnership was between $100,000 and $105,000. The other assets would probably have increased this sum to $135,000. The property settlement agreement contained a detailed description of these assets (without values). The plaintiff was awarded her personal effects, certain household furnishings, and a total cash amount of $6,600, payable in installments over 3 years. The defendant was awarded the balance of the community estate.

The trial court, with substantial evidence to support it, found that prior to entering into the agreement, plaintiff

was fully knowledgeable of the values of the assets of the marital community, since she had for many years worked in the management of the partnership and personally handled the parties' personal finances. Findings of fact 12, 14.

The trial court further found, with substantial evidence to support it, that prior to the execution of the property settlement agreement and during the pendency of the divorce action, the plaintiff was repeatedly and independently advised by a number of people, "(a) to get her own attorney, (b) that she was entitled to a larger settlement, (c) that she had a right to a one-half interest in the community property, and (d) to take more of the community assets." Findings of fact 22.

■ From our detailed review of the record, we are convinced that the trial court was correct in its finding that plaintiff, with knowledge of all the facts, acted "freely and voluntarily" in entering into the agreement. Even should we disagree with that finding, we are bound by the frequently stated rule that findings of fact made by the trial court cannot be disturbed on appeal if there is substantial evidence to support such findings. *Watson v. Yasunaga,* 73 Wn.2d 325, 438 P.2d 607 (1968).

The first question for our decision is whether or not a wife may waive substantially all of her community interest upon the dissolution of the marriage where no wrongdoing has occurred to induce such waiver.

■ In approaching this question, we are mindful of the well-established rule that a wife has a vested property right in the community property equal with that of her husband. *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937); *In re Estate of McCoy,* 189 Wash. 103, 63 P.2d 522 (1937).

We are also mindful that by statute the burden has been placed upon the husband in the transaction now before us, to show the good faith in the transaction. RCW 26.16.210. *Yeager v. Yeager,* 82 Wash. 271, 144 P. 22 (1914).

Both by statute and Supreme Court decision, the courts are required to carefully scrutinize transactions between

spouses because of the confidential relationship existing between them. RCW 26.08.110. The case of *In re Estate of Madden*, 176 Wash. 51, 53, 28 P.2d 280 (1934) states the rule:

> While the common law disabilities of married women have been removed by statute in this state, the confidential relationship existing between husband and wife is still recognized to exist. . . . In such relationships of confidence, courts of equity examine with great care transactions between the parties and agreements affecting their property rights. The burden, in such cases, is on him seeking to sustain the agreement to prove that it was fair and entered into with full knowledge of the facts by the one reposing confidence.

But these statutes and rules afford us no basis for determining the question here presented, since the defendant husband has, by the trial court's findings, sustained his burden of showing the bona fides of the transaction.

▮ Also, the doctrine of constructive trust, so ably advocated by plaintiff, furnishes us with no basis for our decision.

That doctrine, were we to hold it applicable to the husband-wife relationship, requires some element of wrongdoing. The Supreme Court adopts the following principles as the basis for application of the constructive trust doctrine:

> " 'In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, *taking advantage of one's weakness or necessities,* or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same; . . . and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right . . . . ' "

*Viewcrest Cooperative Ass'n v. Deer,* 70 Wn.2d 290, 293, 422 P.2d 832 (1967); *Bangasser & Assoc. Inc. v. Hedges,* 58 Wn.2d 514, 516, 364 P.2d 237 (1961).

We do not deem it appropriate to apply this rule where the trial court has found: "She got what she wanted out of the settlement and her failure to further exercise her rights was a matter of her own choosing. It did not result from any wrongful conduct on the part of either [defendant] or [his attorney]." Findings of fact 20.

Our research has disclosed no authorities, in this state or elsewhere, which hold that a spouse may not voluntarily waive his or her interest in the community property. It has been alluded to by dictum in but one case where the Supreme Court stated: "We have consistently held that the court, in a divorce proceeding, must make a just and equitable distribution of the community property of the parties, where there has been no waiver of this right." *Garrett v. Garrett,* 67 Wn.2d 646, 648, 409 P.2d 470 (1965).

The doctrine of waiver has generally been held to apply to *all rights* or privileges to which a person is legally entitled. In *Bowman v. Webster,* 44 Wn.2d 667, 669, 269 P.2d 960 (1954), the Supreme Court stated:

A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. It may result from an express agreement or be inferred from circumstances indicating an intent to waive. It is a voluntary act which implies a choice, by the party, to dispense with something of value or to forego some advantage. The right, advantage, or benefit must exist at the time of the alleged waiver. The one against whom waiver is claimed must have actual or constructive knowledge of the existence of the right. He must intend to relinquish such right, advantage, or benefit; and his actions must be inconsistent with any other intention than to waive them.

We hold that the doctrine of waiver is applicable to transactions between spouses generally and in the divorce situation specifically, where, as here, the choice to waive is made freely and voluntarily, without fraud, undue influ-

ence, duress, concealments, or without the taking advantage of one's weakness or necessities by the other.

This doctrine is not new to the husband-wife relationship. It is well settled that by post-nuptial agreement, a wife may waive her right to inherit and even in some circumstances her statutory right to a family allowance. 9 A.L.R.3d 955. Of course, such agreements may be invalidated by fraud, duress, or undue influence or circumstances showing that true consent was not given freely and deliberately.

We are not fearful that this application of the rule will be abused by husbands as was suggested by plaintiff. Trial courts have been and will be keen to ferret out indications of wrongdoing, however slight, on the part of either spouse, which might tend to taint the transaction. Trial courts are by law given wide discretion in the distribution of property, both community and separate upon the termination of marriages by divorce.

We also believe that persuasive reasons exist for the application of the rule of waiver to the type of case here presented. When the divorce decree is entered, the deeds to properties exchanged and recorded, and the parties go their separate ways to engage in business, there must be some finality to the divorce settlement upon which both can reasonably rely. To permit collateral attacks upon divorce proceedings without any more than a showing of a disparity in the award, would open a Pandora's Box, affecting subsequent marriages, real property titles and future business endeavors of both spouses. The uncertainties which would result would be devastating.

Finally, we believe that the judgment must be affirmed because of the long delay in which plaintiff waited in asserting her claim. The trial court found that plaintiff discovered no new facts after the entry of the decree which she had not already known. Findings of fact 23. This finding is supported by substantial evidence. Although consulting with several lawyers in the years immediately following the entry of the decree on May 2, 1958, plaintiff did not bring this action for more than 7 years.

■ It is our view that whether the relief here sought was grounded upon fraud or constructive trust, it would be subject to the 3-year statute of limitations. RCW 4.16-.080(4); *Arneman v. Arneman,* 43 Wn.2d 787, 264 P.2d 256, 45 A.L.R.2d 370 (1953). *Viewcrest Cooperative Ass'n v. Deer, supra.*

Plaintiff contends, however, that certain gratuitous payments made by the defendant to the plaintiff after completion of his obligation under the property settlement agreement, caused her to delay in the commencement of the action. Consequently, she argues that defendant should be estopped from asserting the statute of limitations as a defense. The trial court found that these gratuitous payments were made at the behest of the children of the parties and not for the purpose of forestalling any action nor to procure any forbearance of action on plaintiff's part. This finding was supported by substantial evidence and precludes an estoppel.

The judgment of dismissal is affirmed. Costs on appeal are awarded to respondent.

ARMSTRONG, C. J., and PETRIE, J., concur.

———

Petition for rehearing denied October 23, 1969.