[No. 2844–2.  Division Two.  July 17, 1978.]

MARIE M. MARTIN, *Appellant*, v. CLIFTON C. MARTIN, *Respondent.*

*Dan Dubitzky,* for appellant.

*David E. Schweinler,* for respondent.

PEARSON, C.J.—Marie and Clifton Martin were married in 1943 and divorced in 1964. At the time of the divorce, Mr. Martin was receiving a military retirement pension of approximately $200 per month. The existence of the pension was disclosed in Mrs. Martin's complaint for separate maintenance, the findings of fact in support of the decree of separate maintenance, Mrs. Martin's complaint for divorce, and the findings of fact in support of the decree of divorce. In both complaints and in both findings, the pension was never listed among the community property, but was always mentioned in a separate article.

The decree of separate maintenance and the decree of divorce were entered by default. Mrs. Martin was awarded custody of the children, child support of $150 per month, attorney's fees, title to the family home, household goods, one of the two family cars, and continued rights as beneficiary in existing insurance policies. Mr. Martin was required to pay the insurance premiums on the policies, which at the time of the decree were being paid by an allotment deducted from his pension. The only asset he received was the other family car. Both parties agree that the military pension was not expressly disposed of as property by the final decree.

In 1976 Mrs. Martin brought a petition in the Superior Court for accounting and distribution of the military pension which she claimed was property held in tenancy in

common. On a motion by Mr. Martin, the court dismissed the petition and granted a summary judgment in Mr. Martin's favor. We affirm.

It is well settled that property not disposed of by the divorce court is held by the parties as tenants in common. *Yeats v. Estate of Yeats,* 90 Wn.2d 201, 580 P.2d 617 (1978); *Ambrose v. Moore,* 46 Wash. 463, 90 P. 588 (1907). The issue here is whether the failure to dispose of a military retirement pension in a 1964 divorce decree created a tenancy in common between the ex–husband and the ex–wife in the pension benefits. Mr. Martin argues that it does not because in 1964 military pension benefits were not considered *property* to be disposed of in a divorce decree. Rather, he contends, they were an "emolument of office" to be considered in awarding alimony and child support. *Roach v. Roach,* 72 Wn.2d 144, 147, 432 P.2d 579 (1967).

In reviewing a property disposition in a divorce decree, we must look to the circumstances existing at the time the decree was entered. *See Edwards v. Edwards,* 74 Wn.2d 286, 288, 444 P.2d 703 (1968). In 1964 the nature of military pension benefits was controlled by *Loomis v. Loomis,* 47 Wn.2d 468, 479, 288 P.2d 235 (1955), which stated that a military pension was "not in the nature of 'future earnings,' but is an asset acquired during coverture." While the *Loomis* dictum arguably supported the conclusion that pension benefits were property, it is clear that the *Loomis* court was concerned primarily with the military pension as an indicia of the husband's ability to pay continuing alimony. Thus in 1964 military pension benefits were not considered property, although their exact nature was uncertain.

This view is supported by later cases. In *Morris v. Morris,* 69 Wn.2d 506, 510, 419 P.2d 129 (1966), the court divided a military pension between the divorcing spouses, but made the order modifiable. This holding is consistent with the notion that pension benefits relate to alimony awards, which are modifiable, rather than property dispositions, which are final. Furthermore, the court noted "it is

not necessary at the present time to reach and dispose of the problem as to the appropriate legal characterization or classification which should be accorded military pensions." *Morris v. Morris, supra* at 508–09. Shortly thereafter, the court reaffirmed the rule that pension benefits were not property and interpreted *Morris* in the manner set forth above. *Roach v. Roach, supra.*

It was not until 1973 that our Supreme Court clearly stated for the first time that a military pension was property subject to division by a dissolution court. *Payne v. Payne,* 82 Wn.2d 573, 512 P.2d 736 (1973). *Payne* distinguished *Roach* on the ground that it had misconstrued *Morris,* and that a court was not precluded from "treating certain aspects of [a military] pension as property". *Payne v. Payne, supra* at 576. The court also quoted language, set forth above, from the 1955 case of *Loomis v. Loomis,* but the court did not purport to rely on *Loomis* as settling the matter. Thus, from all indications it appears that the matter of whether a military retirement pension was property subject to disposition in a divorce decree was not determined until 1973, some 9 years after the Martins were divorced. *See* Recent Developments, *Disposition of Military Retired Pay Upon Dissolution of Marriage,* 50 Wash. L. Rev. 505 (1975); Rieke, *The Dissolution Act of 1973: From Status to Contract?* 49 Wash. L. Rev. 375, 403–04 n.124 (1974).

Counsel for Mrs. Martin urges, without citing any authority, that we apply the rule of *Payne v. Payne* to a 1964 divorce decree. We decline. If a decision of an appellate court announces a new principle of law, it should not apply that principle retroactively where its application would produce substantial inequitable results. *Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 448, 546 P.2d 81 (1976). It appears from the record that the trial court did consider Mr. Martin's pension benefits when it gave Mrs. Martin nearly all of the community property and ordered Mr. Martin to continue to pay the premiums on the life insurance policies as well as child support. The order left

Mr. Martin with just two assets: a car and (implicitly) his pension. To require a further division of the pension without considering the property previously disposed of would upset the obvious balance struck by the trial court. In addition, any division based on an accounting of pension benefits received by Mr. Martin for the past 14 years would create a serious, unexpected financial hardship for Mr. Martin.

We are also faced with the specter of countless similar petitions if *Payne* is applied retroactively. We have previously recognized a compelling policy interest favoring finality in property settlements. *Peste v. Peste*, 1 Wn. App. 19, 459 P.2d 70 (1969). This policy interest would be greatly undermined if we were to create the potential for a reexamination of every military divorce prior to *Payne*. Such a result would be both unwise and unnecessary. Where the existence of the pension was disclosed to trial courts prior to *Payne*, we feel certain that it was *directly* or *indirectly* taken into account, as in this case. *See Yeats v. Estate of Yeats, supra.* Where the existence of the pension was not disclosed, the parties must be conclusively presumed to have relied on the pre–*Payne* understanding that military pensions were not property to be disposed of by the divorce court. The parties ought to be bound to the rules as they were generally understood at the time of divorce. We, therefore, hold that *Payne v. Payne* should not be given retroactive effect.

█ Finally, we hold that Mrs. Martin, by her conduct, either waived any community property interest she may have had in 1964, *see Peste v. Peste, supra,* or is equitably estopped from asserting such right. *See Witzel v. Tena,* 48 Wn.2d 628, 295 P.2d 1115 (1956). Mrs. Martin clearly knew about the pension because she mentioned it in her pleadings. Not only did she fail to claim a community property interest in the pension, but also she accepted the benefits of the insurance protection, the premiums of which were then being paid from the pension. This conduct is sufficient to

constitute either a voluntary and intentional relinquishment of her right to the pension, *see Bowman v. Webster,* 44 Wn.2d 667, 669, 269 P.2d 960 (1954), or the conduct warrants application of the doctrine of equitable estoppel. *Witzel v. Tena, supra.*

The judgment is affirmed.

REED and DORE, JJ., concur.