[No. 13873-1-I.   Division One.   August 5, 1985.]

*In the Matter of the Marriage of* JAMES GIROUX, *Respondent, and* ROSE GIROUX, *Appellant.*

316

*A. Robert E. Thomson* and *deMers & Thomson, Inc., P.S.,* for appellant.

*Gary R. W. Slater,* for respondent.

WEBSTER, J.—In this case we are asked to decide whether the Uniformed Services Former Spouses' Protection Act (USFSPA) provisions for retroactivity entitle Rose Giroux to relief from her amended dissolution decree, entered during the 20–month period when federal law prohibited state

courts from treating military pensions as community property. We hold the trial court erred in denying her CR 60(b) motion for relief from judgment.

## Facts

James and Rose Giroux originally had their marriage dissolved on March 10, 1981. The trial court ordered James to pay Rose one–half of the community's interest in his military retirement pay beginning in June of 1981. James Giroux appealed this portion of the dissolution decree. On June 26, 1981, the United States Supreme Court decided *McCarty v. McCarty*, 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981), holding that federal law prohibits state courts from dividing military retirement pay pursuant to state community property laws.

A commissioner of this court remanded the Giroux case for reconsideration in light of *McCarty*. On February 8, 1982, the trial court entered an amended decree awarding all interest in the military retirement pay to James Giroux. Rose Giroux's attorney signed the decree and findings with the following notation: "Copy received, approved as to form and notice of presentation waived: approved under protest." Rose Giroux did not appeal from the amended decree.

On September 8, 1982, the President signed the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, which, with some limitations, permits state courts to treat military retired pay payable for pay periods beginning after June 25, 1981, as community property. The act set February 1, 1983, as its effective date. On January 27, 1983, Rose Giroux filed a motion under CR 60(b)(11) for relief from judgment, arguing that the enactment of the USFSPA constituted a "reason justifying relief" from the amended decree. The trial court denied this motion and the subsequent motion for reconsideration. The record does not reveal the reasons for the trial court's ruling, but the parties indicate that the court was concerned with the constitutionality of a retroactive application of the act.

RETROACTIVITY OF USFSPA

The first issue before us is therefore whether the retroactivity provisions of the USFSPA deprive James Giroux of a vested right without due process of law.

Before 1981, the Washington Supreme Court recognized that a military pension was community property to the extent that community funds or community labor have been invested and, as such, could be divided. *See Wilder v. Wilder,* 85 Wn.2d 364, 534 P.2d 1355 (1975). After *McCarty,* the rule in Washington became that military nondisability retired income was not community property. *In re Marriage of Dessauer,* 97 Wn.2d 831, 650 P.2d 1099 (1982). With the enactment of the USFSPA, Washington returned to the pre–*McCarty* rule. *In re Marriage of Smith,* 100 Wn.2d 319, 324, 669 P.2d 448 (1983). This state has not yet addressed the question of the USFSPA's effect on a dissolution which became final sometime between the *McCarty* decision and the effective date of the act, where the USFSPA and *McCarty* would necessarily call for different results. In *In re Marriage of Konzen,* 103 Wn.2d 470, 693 P.2d 97 (1985), our Supreme Court noted that the act was meant to apply retroactively, but affirmed the trial court under both the act and *McCarty.*

The parties agree that Congress intended the act to apply retroactively. 10 U.S.C. § 1408(c)(1) provides:

Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

The Senate report explained the intent of this section:

The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non–disability military retired or retainer pay. The provision is intended to remove the federal pre–emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction

to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution. This power is returned to the courts retroactive to June 26, 1981. This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision.

S. Rep. No. 502, 97th Cong., 2d Sess. 16, *reprinted in* 1982 U.S. Code Cong. & Ad. News 1596, 1611. Other states have applied the act retroactively and thereby eliminated the effects of the *McCarty* decision. *E.g., In re Marriage of Hopkins,* 142 Cal. App. 3d 350, 191 Cal. Rptr. 70 (1983); *Smith v. Smith,* 458 A.2d 711 (Del. Fam. Ct. 1983); *Griggs v. Griggs,* 107 Idaho 123, 686 P.2d 68 (1984); *Menard v. Menard,* 460 So. 2d 751 (La. Ct. App. 1984); *Castiglioni v. Castiglioni,* 192 N.J. Super. 594, 471 A.2d 809 (1984); *Walentowski v. Walentowski,* 100 N.M. 484, 672 P.2d 657 (1983).[1]

■■ James Giroux argues that even if Congress intended the act to be retroactive, retroactive application deprives him, without due process of law, of his vested right to the pension payments. He claims that his right to the pension vested when the amended decree became final. However, to determine the constitutionality of retroactive legislation, the proper inquiry is not whether vested rights have been interfered with, but whether "settled expectations honestly arrived at with respect to substantial inter-

---

[1]This court has held that under section 1006(b) of the act, a dissolution decree which distributes part of a military pension to the spouse and which did not become final prior to June 26, 1981, is effective for pay periods beginning after February 1, 1983. *In re Marriage of Wood,* 34 Wn. App. 892, 894, 664 P.2d 1297 (1983). Note, however, that section 1006(b) refers only to when payments may be made directly to the spouse by the Secretary, not to the question of entitlement to payment. *In re Marriage of Hopkins,* 142 Cal. App. 3d 350, 191 Cal. Rptr. 70, 77 (1983). We are concerned in this appeal with the question of entitlement.

ests" will be defeated. 2 C. Sands, *Statutory Construction* § 41.05, at 261 (4th ed. 1973).

An argument similar to James Giroux's was made to this court in *In re Santore*, 28 Wn. App. 319, 623 P.2d 702 (1981). After the unintentional repeal of a statute permitting adoption by written consent of natural parents, the Legislature passed former RCW 26.32.916 with provisions for retroactivity. The Santores then sought to regain custody after having consented to the adoption of their child. They argued that

> the statute retroactively interfere[d] with their "vested rights," in violation of the due process and contract clauses of the federal and state constitutions, by making effective Mrs. Santore's consent to adoption, which was ineffective under the law existing when the consent was executed . . .

*In re Santore, supra* at 324. The court held:

> The proper test of the constitutionality of retroactive legislation is whether a party has changed position in reliance upon the previous law or whether the retroactive law defeats the reasonable expectations of the parties, not whether the law abrogates a "vested right," which is merely a conclusory label. Curative laws, such as RCW 26.32.916, which implement the original intentions of affected parties are constitutional because there is no injustice in retroactively depriving a person of a right that was created contrary to his expectations at the time he entered into the transaction from which the right arose.

(Citations omitted.) *In re Santore, supra* at 324.

Applying the test adopted in *Santore* to the case at bar, it is difficult to see how retroactive application of the act would defeat the reasonable expectations of the parties. Throughout their marriage, and until the *McCarty* decision, the Girouxs could reasonably have expected that James Giroux's military pension would be treated as community property by the courts of this state. Only after the *McCarty* decision could the husband have reasonably expected to receive as his separate property what was

formerly almost all of the couple's community property. Retroactive application of the act cannot be said to be unfair or unreasonable. Recognizing the important contribution of the military spouse to our national defense, "that frequent change–of–station moves and the special pressures placed on the military spouse as a homemaker make it extremely difficult to pursue a career affording economic security, job skills and pension protection", Congress intended that the "status of the military spouse be acknowledged, supported and protected." 1982 U.S. Code Cong. & Ad. News, at 1601.

Furthermore, due process and equal protection considerations weigh more heavily in favor of Rose Giroux. Not to apply the USFSPA retroactively

> would be to carve out a category of people whose cases happened to be decided between June 25, 1981 and September 8, 1982 and deprive them of substantial property interests which all other similarly–situated litigants have been awarded.

*Smith v. Smith, supra* at 715.

█ A final constitutional consideration is James Giroux's argument that retroactive application of the act violates the constitutional guaranty of separation of powers. As he neither explains this argument, nor cites to any supporting authority, we need not address this issue. *DeHeer v. Seattle Post–Intelligencer,* 60 Wn.2d 122, 126, 372 P.2d 193 (1962). We note, however, that another court has found retroactive application of the act does not violate the separation of powers doctrine. *In re Marriage of Fairfull,* 161 Cal. App. 3d 532, 207 Cal. Rptr. 523, 526 (1984).

## CR 60(b)

Having determined that the USFSPA is constitutional, we next consider whether the enactment of the USFSPA is a proper ground for a motion under CR 60(b)(11).

█ As the Senate report accompanying the act indicated, Congress intended to provide postjudgment relief to

those individuals "who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation". 1982 U.S. Code Cong. & Ad. News, at 1611. A CR 60(b)(11) or CR 60(b)(6) motion appears to be the only procedure by which to obtain relief.[2]

Several courts have held that their state's version of CR 60(b) authorizes a spouse to request postjudgment relief from a dissolution decree entered during the period between *McCarty* and the enactment of the USFSPA. *Edsall v. Superior Court,* 143 Ariz. 240, 693 P.2d 895 (1984); *Smith v. Smith, supra; Castiglioni v. Castiglioni, supra; Harkins v. Harkins,* 101 N.M. 296, 681 P.2d 722 (1984). James Giroux urges us to distinguish between cases that were in the appeal stage when the law changed, and those which became final prior to the signing of the act. However, it would be unreasonable to say that Rose Giroux waived her rights under the act by not pursuing what appeared to be at the time a frivolous appeal. For similar reasons, we do not find she waived her rights by signing an agreed judgment, under protest, rather than demanding a trial. *Castiglioni v. Castiglioni,* 471 A.2d at 811.

Rose Giroux asks this court to remand with instructions that the trial court rescind the amended decree and revive the original decree. However, the act does not require the reinstatement of earlier judgments or the division of military pay, but only permits the reopening of final judgments for reconsideration in light of its provisions.

---

[2]CR 60(b) provides in part:

"**Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . .

"(6) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; . . .

"(11) Any other reason justifying relief from the operation of the judgment."

We therefore reverse and remand for further proceedings in accordance with this opinion.

RINGOLD, J., and PETRIE, J. Pro Tem., concur.