[No. 20839-3-II.   Division Two.   July 10, 1998.]

*In the Matter of the Marriage of* KAREN RAE JENNINGS, *Respondent*, and MICHAEL KEVIN JENNINGS, *Appellant*.

*Jerome L. Buzzard* of *Buzzard & Allen,* for appellant.
*Forrest L. Wagner* of *Law Office of Forrest Wagner,* for respondent.

ARMSTRONG, J. — In this dissolution action, the trial court awarded Karen Jennings one-half of Michael Jennings' military retirement, but none of his military disability pay. After entry of the dissolution decree, the military determined that Michael's disability had worsened and, therefore, increased his disability pay, but reduced his retirement. Because this reduced Karen's share of the retirement from $813.50 to $136 per month, she moved to vacate the decree under CR 60(b)(11). The trial court granted the motion and awarded Karen permanent maintenance in an amount equal to what she would have received if Michael's disability and retirement payments had not changed. Mi-

chael appeals, contending that the trial court abused its discretion in vacating the award under CR 60. We agree and, therefore, reverse.

## FACTS

In 1992, the trial court dissolved the marriage of Michael and Karen Jennings, awarding Karen one-half of Michael's military retirement pay. The court awarded Michael the other half of his military retirement pay and, because it is not divisible under federal law, all of his disability compensation.[1] At the time of the decree, Michael's military retirement pay was $2,139 per month and his military disability was $318 per month. After deductions, Karen received $813.50 per month as her share of the retirement pay.

After entry of the dissolution decree, the Veteran's Administration ruled that Michael's disability had worsened, and his disability status was changed. His military disability compensation rose to $2,285 per month, and his retirement pay was reduced to $272.90 per month.[2] He also received $1,200 per month in Social Security disability. Because of the change in benefits, Karen's portion of the retirement was reduced from $813.50 to $136 per month.

---

[1]Under the Uniform Services Former Spouses' Protection Act (USFSPA), state courts may treat "disposable retired or retainer pay" as community property subject to division in dissolution proceedings. 10 U.S.C. § 1408(c)(1); *Mansell v. Mansell*, 490 U.S. 581, 584, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989). But Congress has expressly excluded the disability benefits of retired service members from the definition of "disposable retired or retainer pay." 10 U.S.C. § 1408(a)(4). Thus, in *Mansell*, the U.S. Supreme Court held that the USFSPA "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Mansell*, 490 U.S. at 594-95.

[2]As the Supreme Court explained in *Mansell*:

> In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay. [38 U.S.C.] § 3105. Because disability benefits are exempt from federal, state, and local taxation, [38 U.S.C.] § 3101(a), military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income. Not surprisingly, waivers of retirement pay are common.

*Id.* at 583-84 (footnote omitted).

Karen moved to vacate the decree under CR 60. The court found that the postdissolution reduction in retirement benefits constituted "extraordinary circumstances" under CR 60(b)(11) and vacated the decree. The court then awarded Karen maintenance in an amount equal to what she would have received under the original decree had Michael's disability status remained unchanged.

■ ■ Michael contends that the trial court erred in vacating the original dissolution decree under Civil Rule 60(b)(11). In addition to the specific reasons set forth in sections (1)-(10), CR 60(b)(11) permits the court to vacate for "[a]ny other reason justifying relief from the operation of the judgment." CR 60(b)(11). This subsection is limited to situations involving "extraordinary circumstances." *In re Marriage of Flannagan*, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985). "The circumstances must relate to 'irregularities which are extraneous to the action of the court or go to the question of the regularity of its proceedings.'" *Id.* at 221 (quoting *State v. Keller*, 32 Wn. App. 135, 141, 647 P.2d 35 (1982)). A motion to vacate a judgment under CR 60 is directed to the discretion of the trial court, and its decision will be reversed only for an abuse of this discretion. *In re Marriage of Shoemaker*, 128 Wn.2d 116, 120-21, 904 P.2d 1150 (1995).

■ ■ But in postdecree challenges to property settlements, the court's discretion to vacate under CR 60(b)(11) has been limited. Property settlements have been reopened under CR 60(b)(11) in only three Washington cases: *In re Marriage of Parks*, 48 Wn. App. 166, 737 P.2d 1316 (1987); *Flannagan*, 42 Wn. App. 214; and *In re Marriage of Giroux*, 41 Wn. App. 315, 704 P.2d 160 (1985). Each case involved the same "extraordinary circumstance," the retroactive application of the Uniform Services Former Spouses' Protection Act (USFSPA).[3] *See Parks*, 48 Wn. App. at 169; *Flannagan*, 42 Wn. App. at 222; *Giroux*, 41 Wn. App. at 321-22. Congress enacted the USFSPA in response

[3]10 U.S.C. § 1408.

to the U.S. Supreme Court's decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), which held that state courts are prohibited from treating military pensions as community property in dissolution proceedings. *Mansell v. Mansell*, 490 U.S. 581, 584, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989).

In *Flannagan*, the trial court, following *McCarty*, awarded two servicemen their entire retirement benefits. After Congress passed the USFSPA, which permits state courts to treat military retirement pay as community property,[4] the spouses moved to vacate the decrees. *Flannagan*, 42 Wn. App. at 216-17. We held that the spouses were entitled to relief under CR 60(b)(11) for four reasons: (1) the clear congressional desire of removing all ill effects of *McCarty*; (2) the speed with which Congress passed the USFSPA; (3) the anomaly of allowing military pensions to be divided before *McCarty* and after the USFSPA, but not during the short reign of *McCarty*; and (4) the limited number of decrees that could be reopened following our decision. *Flannagan*, 42 Wn. App. at 222. But "we emphasize[d] the importance of finality and the limited nature of our deviation from the doctrine." *Id.* at 218; *accord Parks*, 48 Wn. App. at 169.

The remaining cases have denied relief under CR 60(b)(11). In *Ross v. Pearson*, 31 Wn. App. 609, 610-11, 614, 643 P.2d 928 (1982), we refused to grant relief under CR 60(b)(11) where the dissolution judge failed to allocate the husband's disability insurance payments and the husband failed to bring a CR 60(b)(1) motion for inadvertence within one year after entry of the decree. In *In re Marriage of Burkey*, 36 Wn. App. 487, 488-91, 675 P.2d 619 (1984), Division Three held that the trial court abused its discretion in finding that inadequate representation justified vacating the decree under CR 60(b)(11). The court noted that in retrospect the parties' separation agreement appeared to favor the husband, but concluded that the wife's inadequate representation did not constitute "manifest injustice" or "unusual circumstances." *Id.* at 490-91 &

---

[4]*See* 10 U.S.C. § 1408(c)(1); *Mansell*, 490 U.S. at 584.

n.2. In *In re Marriage of Tang*, 57 Wn. App. 648, 654-56, 789 P.2d 118 (1990), Division One refused to grant relief even though the parties' settlement agreement did not list, value, or characterize their property and left them as tenants in common. The court held that these were not the "unusual situations" contemplated by CR 60(b)(11). *Tang*, 57 Wn. App. at 656. Division One also held it error to allow modification of a husband's property payment schedule to the wife because of his emergency financial difficulties in business. *In re Marriage of Irwin*, 64 Wn. App. 38, 64, 822 P.2d 797 (1992). Similarly, in *In re Marriage of Yearout*, 41 Wn. App. 897, 898, 902, 707 P.2d 1367 (1985), we held that a husband had not shown "unusual circumstances" where his justification for reducing maintenance was that his income had substantially declined. Although the *Yearout* case involved the modification of spousal maintenance and not a property settlement, the case is similar to the property settlement cases because the parties incorporated a nonmodifiable separation agreement into their decree of dissolution. *Id.* at 899.

"We have previously recognized a compelling policy interest favoring finality in property settlements." *Martin v. Martin*, 20 Wn. App. 686, 690, 581 P.2d 1085 (1978) (citing *Peste v. Peste*, 1 Wn. App. 19, 459 P.2d 70 (1969)). In *Peste v. Peste*, we said, "To permit collateral attacks upon divorce proceedings without any more than a showing of a disparity in the award, would open a Pandora's Box, affecting subsequent marriages, real property titles and future business endeavors of both spouses. The uncertainties which would result would be devastating." *Id.* at 25. In *Martin*, we refused to retroactively apply our State Supreme Court's decision in *Payne v. Payne*, 82 Wn.2d 573, 512 P.2d 736 (1973). *Martin*, 20 Wn. App. at 689. The *Payne* decision held that military pensions were property subject to division in a decree of dissolution. *Payne*, 82 Wn.2d at 574-77. We noted that retroactive application would raise the "specter of countless similar petitions" and would undermine the policy interest of finality. *Martin*, 20 Wn.

App. at 690. In *In re Marriage of Brown*, 98 Wn.2d 46, 49, 653 P.2d 602 (1982), the Washington Supreme Court recognized that "in the conflict between the principles of finality in judgments and the validity of judgments, modern judicial development has been to favor finality rather than validity."

We conclude that to set aside a final dissolution decree pursuant to CR 60(b)(11) a party must show more than a postdecree change in the value of assets. Here, Karen Jennings has shown only that one asset awarded to her has declined substantially in value. This is not an "extraordinary circumstance" within the meaning of CR 60(b)(11).[5]

We reverse and remand to reinstate the final decree.[6]

BRIDGEWATER, A.C.J., concurs.

MORGAN, J. (dissenting) — The trial court dissolved the parties' marriage in March 1992. It awarded Michael's military retirement pay and military disability pay as follows:

> The military retirement pay presently being received by the Respondent [husband] is a marital asset to be divided by the Court as property. The parties were married for the entire length of the service member's active duty and the Petitioner [wife] is therefore entitled to full medical, commissary and

---

[5]Karen Jennings argues that our decision today will result in the nullification of property settlements whenever a former soldier's disability status is changed after entry of the final decree of dissolution. But this need not be the case. As has been recognized in other states, the nonmilitary spouse can protect her asset by requiring the military spouse to indemnify her for any reduction in retirement benefits. *See Abernathy v. Fishkin*, 699 So. 2d 235, 239-40 (Fla. 1997); *Hisgen v. Hisgen*, 554 N.W.2d 494, 498 (S.D. 1996); *In re Marriage of Strassner*, 895 S.W.2d 614, 617, (Mo. Ct. App. 1995); *McHugh v. McHugh*, 124 Idaho 543, 861 P.2d 113, 155 (Ct. App. 1993); *Owen v. Owen*, 14 Va. App. 623, 419 S.E.2d 267, 269-70 (1992). Indemnification clauses have been held not to violate the *Mansell* Court's prohibition against dividing disability benefits, because the military spouse, who waives retirement benefits to receive increased disability payments, can indemnify the nonmilitary spouse from other available assets. *Hisgen*, 554 N.W.2d at 498; *accord Abernathy*, 699 So. 2d at 240; *Owen*, 419 S.E.2d at 269-70.

[6]We do not decide today whether Karen Jennings has other remedies available to enforce the award of her share of Michael Jennings' military retirement.

exchange privileges. The Petitioner is entitled to fifty percent (50%) of the gross retirement pension and shall be paid the sum of not less than Eight Hundred Thirteen Dollars and Fifty cents ($813.50) per month commencing with the month of September 1991. Said allotment of Eight Hundred Thirteen Dollars and Fifty cents ($813.50) per month shall be paid directly to her from the Army Finance Center under the provisions of the Uniformed Services Former Spouses Protection Act and further redefined by PL 101.510. The Petitioner will receive fifty percent (50%) of the gross retirement pay and she should be entitled to a like percentage of the withholding tax credit, as well as cost of living adjustments (COLAS). The portion of the retirement pay waived by the Respondent in order to receive disability compensation from Veteran's Affairs, is not divisible by the Court and as such should be awarded to the Respondent as his sole and separate property under provisions of Federal Law.[7]

The trial court did not award posttrial maintenance, although it entered judgment for pretrial maintenance that remained unpaid at the time of trial.

When the final decree was entered, Michael was receiving military disability pay in the amount of $318 per month. Later, he secured an increase in disability, up to $2,285 per month,[8] and a corresponding decrease in retirement, down to $272.90 per month. As a direct result, Karen began receiving $136 per month, instead of the $813 or more that had been set forth in the 1992 decree.

On October 18, 1995, Karen obtained an order requiring Michael to show cause (1) why the decree should not be vacated pursuant to CR 60(b); (2) why maintenance should not be awarded in an amount equal to one half of the new disability payments; and (3) why the decree "should not be clarified to require [Michael] to continue to pay no less than $813 per month to [Karen]."[9] After a hearing, the trial court ordered that the 1992 decree "shall be set aside

---

[7]Clerk's Papers at 19-20.

[8]*Id.* at 67.

[9]*Id.* at 35.

insofar as it relates to the division of [Michael's] retirement,"[10] and that Michael pay Karen "non-modifiable compensatory spousal maintenance"[11] in an amount sufficient to give Karen the benefits of the original 1992 decree (i.e., not less than $813 per month).[12] Michael then filed this appeal.

I reject out of hand Karen's first ground for relief. She was seeking to enforce the decree, not set it aside, and CR 60 plays no role in this case.

I reject out of hand Karen's second ground for relief. A trial court may not resurrect postdecree maintenance that has previously expired, *Mason v. Mason*, 40 Wn. App. 450, 457, 698 P.2d 1104 (citing *Brown v. Brown*, 8 Wn. App. 528, 507 P.2d 157 (1973)), *review denied*, 104 Wn.2d 1017 (1985), nor may it *initially* award postdecree maintenance more than three years after the dissolution decree has become final.[13]

I accept Karen's third ground for relief, even though the trial court did not reach it, because we may affirm on any ground within the pleadings and proof. *State v. Michielli*, 132 Wn.2d 229, 242, 937 P.2d 587 (1997) (citing *Tropiano v. City of Tacoma*, 105 Wn.2d 873, 876, 718 P.2d 801 (1986)). In asserting her third ground for relief, Karen asked that the parties' decree "be clarified to require [Michael] to continue to pay no less than $813 per month to [Karen]."[14] A dissolution decree may be clarified, as opposed to modified, when it leaves ambiguous the rights of a party. *Rivard v. Rivard*, 75 Wn.2d 415, 418, 451 P.2d 677 (1969); *Chavez*

[10]*Id.* at 56.

[11]*Id.*

[12]*Id.* at 69-70.

[13]In passing, I also note that there is no such thing as "non-modifiable compensatory spousal maintenance." A judgment awarding maintenance is non-modifiable if the parties so agree, RCW 26.09.070(7), but not otherwise. *In re Marriage of Short*, 125 Wn.2d 865, 876, 890 P.2d 12 (1995). A judgment awarding maintenance must rest on the factors set forth in RCW 26.09.090, which do not include "compensation." A judgment imposed to effect an equitable *property distribution* may be "compensatory," but is it *not* a judgment for "maintenance."

[14]Clerk's Papers at 35.

*v. Chavez*, 80 Wn. App. 432, 435, 909 P.2d 314, *review denied*, 129 Wn.2d 1016 (1996); *In re Marriage of Jarvis*, 58 Wn. App. 342, 345, 792 P.2d 1259 (1990); *In re Marriage of Haugh*, 58 Wn. App. 1, 8, 790 P.2d 1266 (1990); *see Byrne v. Ackerlund*, 108 Wn.2d 445, 453, 739 P.2d 1138 (1987). The decree in this case was ambiguous from and after the time of its entry; it can be read as giving Karen a percentage interest in a fluctuating fund (50 percent of Michael's retirement pay, however little or much that might be), or a personal judgment against Michael for not less than $813 per month (regardless of the amount of his retirement benefit), with the military to pay on his behalf if the military would so consent. Faced with this ambiguity, the trial court's task was to ascertain its own intent as of the time it entered the decree, *In re Marriage of Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981); *Chavez*, 80 Wn. App. at 435-36; *Jarvis*, 58 Wn. App. at 345, and it did not abuse its discretion when, in effect, it ruled that it had originally intended to give Karen judgment for not less than $813 per month.

In reaching this result, I note that the parties' decree has been final since 1992, and that no one has ever contended it was erroneous when entered. It follows that the parties are bound by its provisions, and that the trial court had authority to construe and clarify those provisions insofar as they were ambiguous.

In reaching this result, I acknowledge that Karen and the trial court used erroneous terminology. The ensuing problem, however, is semantical rather than substantive. Semantically, the trial court erred (1) by saying it was setting aside a decree it was actually enforcing, and (2) by saying it was granting "non-modifiable compensatory spousal maintenance," when it was really clarifying a judgment previously granted to effect an equitable division of the parties' property. Substantively, however, the court was entitled to clarify its earlier judgment so that Karen would receive the minimum $813 per month it had originally intended.

In reaching this result, I note *McHugh v. McHugh*, 124 Idaho 543, 861 P.2d 113 (Ct. App. 1993), a very similar case. There, the parties agreed that the wife would receive $360 per month of the husband's Navy retirement pay. "This amount was not to be increased or decreased 'for any reason' except by the application of cost-of-living increases, of which [the wife] was entitled to a pro rata share." *McHugh*, 861 P.2d at 114. The agreement was incorporated into a dissolution decree that was entered in April 1990 and first clarified in December 1990. The first clarifying order provided that the wife would receive 18 percent of her husband's retirement pay, and that the Navy would pay the wife directly. A year or so after the first clarifying order, the Navy increased the husband's disability pay and reduced his retirement pay correspondingly. As a direct result, the wife began receiving $173 per month instead of $360 per month. The trial court responded with a second clarifying order in which it stated that the wife was entitled to the original $360, plus pertinent cost-of-living increases, even though that amount now represented 40 percent of the husband's retirement pay. The trial court ruled, in effect, that the dollar amount ($360) had been intended to control over the former percentage amount (18 percent). On appeal, the Idaho Court of Appeals recognized that the trial court was merely enforcing its earlier decree, and it affirmed, just as we should do here.

At bottom, it seems to me that courts should apply the law so as to beget justice. The trial court did that, even though it used the wrong labels. For that reason, I would affirm the trial court's result, but remand for entry of an order clarifying that the court's intent in entering the original degree was to require Michael to pay, as property distribution, not less than $813 per month.

Review granted at 137 Wn.2d 1007 (1999).