(982 P.2d 995)

No. 80,115

In the Matter of the Marriage of PRISCILLA A. PIERCE, *Appellant*, and DOUGLAS A. PIERCE, *Appellee*.

Opinion filed June 25, 1999.

*Ross D. Alexander*, of Alexander, Floodman & Casey, Chartered, of Wichita, for the appellant.

*N. Trip Shawver*, of Wichita, for the appellee.

Before LEWIS, P.J., GREEN and KNUDSON, JJ.

LEWIS, J.: The parties to this lawsuit, Priscilla and Douglas Pierce, were married twice and divorced twice. This action does not concern their first marriage or their first divorce. It deals with Priscilla and Douglas' second marriage and their second divorce, which was granted in 1993. The parties apparently entered into a property settlement agreement at the time of the divorce. In 1997,

Priscilla filed a motion which would have, in effect, modified or amended the original property settlement agreement. The trial judge denied the motion, and Priscilla appeals.

At the time of the divorce, Douglas had retired from the United States Air Force. He was receiving some retirement pay for his years of service. Under the parties' property settlement agreement, Priscilla was awarded, among other things, "eighteen twentieths ($^{18}$⁄$_{20}$ths) of one-half (½) *of the military retirement benefits of the Respondent, pursuant to 10 USC 1408.* From the amount due the Petitioner the Air Force or Defense Accounting Agency shall deduct the cost of the Survivor Benefit Plan of which the Petitioner is the beneficiary." (Emphasis added.)

The language quoted above is the only reference to Priscilla's having any interest in the retirement pay. The agreement does not specify that she is to receive any certain amount per month, and it does not specify the length of time for which she is to receive the payment. In addition, there is nothing in the agreement which prevents Douglas from converting his retirement pay to disability benefits.

After the divorce decree was entered, Priscilla filed a motion and the trial court responded by entering an order designed to secure to Priscilla her payments from Douglas' retirement benefits until the Qualified Domestic Relations Orders had been accepted by the United States Air Force.

We are unable to determine whether the parties reduced their property settlement agreement to writing. We assume they dictated it into the record and that the trial court included it in its decree of divorce. In any event, the trial court considers the agreement set forth in the decree to be the settlement agreement of the parties. The court, in its journal entry, states:

"IT IS THEREFORE BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECKED [*sic*] that the above findings and agreements hereinabove set forth be and hereby are made valid and binding orders of this Court. *That pursuant to K.S.A. 60-1610, this agreement may not be amended or modified except by the written agreement and consent of each party hereto.*" (Emphasis added.)

The trial court's journal entry and decree of divorce was signed by Priscilla and Douglas, as well as by their respective attorneys.

As we pointed out earlier, there was no indication that Priscilla was to receive any guaranteed amount from Douglas' retirement. Indeed, there is nothing in the record to indicate what she was getting. However, her attorney has commented that she was receiving $600 per month. For the purposes of this appeal, we will assume that figure is correct.

At some point, Douglas' retirement pay was converted to or became disability pay. We cannot tell from the record how this occurred. It may have been the result of a request from Douglas or it may have been done by the Veterans Administration (VA) in response to his deteriorating physical condition. In any event, apparently Douglas' physical condition reached a point at which all of the benefits he was receiving were disability benefits.

According to Priscilla's attorney, she was receiving $600 one month and nothing the next. In order to rectify that, Priscilla filed a motion which stated:

"COMES NOW petitioner, Priscilla A. Pierce, and moves the Court to compel respondent to reinstate his military retirement pay so that petitioner can continue to receive her 45% share per the contractual agreement of the parties as set out in the Decree of Divorce herein, or in the alternative, to require respondent to pay to petitioner what she would otherwise receive if respondent had not breached his contractual agreement with petitioner."

The trial court denied the motion, and Priscilla appeals.

We begin by noting that at the time the motion was filed, the decree of divorce had been a final order for nearly 4 years. The only way to grant the relief which Priscilla sought would have been to modify and change the property settlement agreement. Other possibilities are not properly considered divorce remedies.

The ability of Kansas trial courts to reach military retirement pay has been a troublesome process. In *McCarty v. McCarty*, 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981), the United States Supreme Court precluded state courts from distributing any portion of a military nondisability retirement pension to the former spouse of a military retiree. 453 U.S. at 235-36.

In 1982, and in response to *McCarty*, Congress enacted the federal Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408. That statute provides: "A court may

treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1) (1994). The trouble in this case, however, can be traced to something Congress failed to do. The statute enacted by Congress specifically excludes from the definition of "disposable retired pay" disability benefits which are deducted from the retired member's pay. 10 U.S.C. § 1408(a)(4)(C) (1994).

The question of the consequences of disability pay not being "disposable retired pay" was answered by the Supreme Court in *Mansell v. Mansell*, 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989). It is this decision which the trial court relied upon in denying Priscilla's motion. In *Mansell*, the husband was receiving both retirement pay and disability pay at the time of the parties' divorce. He agreed to pay his wife 50% of his total retirement pay, which included a portion of his disability payments. After the divorce, he went back to court, asking the court to remove any requirement that he share his disability pay with his wife. The motion was denied by the trial court, and *Mansell* was appealed to the United States Supreme Court.

The question presented to the Supreme Court was whether state courts, pursuant to 10 U.S.C. § 1408, could treat as divisible property upon divorce military retirement pay waived by the retiree in order to receive veterans' disability benefits. 490 U.S. at 583.

The court reasoned that Congress had enacted 10 U.S.C. § 1408 in direct response to *McCarty*. The USFSPA controlled the extent military benefits could constitute divisible marital property and defined disposable retired pay to specifically exclude waived amounts to receive veteran's disability payments. The Court's language was precise and limited; it permitted state courts to treat disposable retired pay as divisible marital property; however, state courts were forbidden to treat total retired pay as community property. The Court construed the USFSPA as not granting state courts the power to treat veterans' disability benefits as marital property divisible under state law.

*Mansell* makes it perfectly clear that the state trial courts have no jurisdiction over disability benefits received by a veteran. The trial court in this case cannot order Douglas to change the payments back to retirement benefits, and it cannot order him to pay his disability benefits to Priscilla. We conclude the court may not do indirectly what it cannot do directly.

We are unable to conclude that, in the present context, the trial court has any method of granting relief to Priscilla. Douglas has not violated the terms of the property settlement agreement. There is absolutely nothing in that agreement that forbids Douglas from waiving all of his retirement pay in order to receive his disability benefits. There is no set monthly amount which Priscilla was to receive under the agreement. There is no guarantee by Douglas, by the Air Force, or by anyone else as to the length of time the retirement pay would exist. This very unambiguous agreement simply gives Priscilla $18/20$ths of one-half of Douglas' retirement pay. Although it does not say so, we presume that Priscilla would receive this amount so long as retirement pay was paid. It appears that she did so. As of this date, Douglas has no retirement pay, but if he did, Priscilla would receive $18/20$ths of one-half of that pay. It should have been perfectly obvious to anyone concerned in 1993 that if Douglas waived all of his retirement pay for a VA disability pension, Priscilla would get $18/20$ths of one-half of nothing. Despite this fact, nothing was put in the agreement to protect Priscilla from what appears to have been an absolute right and option which Douglas could exercise with regard to his retirement pay. Again, we do not know whether the retirement pay was waived voluntarily by Douglas or was simply waived by the VA due to his deteriorating physical condition.

The agreement entered into by the parties could not "be amended or modified except by the written agreement and consent of each party hereto." Priscilla asks that we violate that provision of the agreement, but we are not inclined to do so.

If there is relief for Priscilla from the judgment entered by the court, it would be found under K.S.A. 60-260(b):

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for

the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under K.S.A. 60-259(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subsection (b) does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in K.S.A. 60-309 or to set aside a judgment for fraud upon the court. Writs of *coram nobis, coram vobis, audita querela*, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in this article or by an independent action."

This statute requires that a motion for relief be filed within 1 year after the judgment takes effect as to grounds (1), (2), and (3). As we said in *In re Marriage of Hunt*, 10 Kan. App. 2d 254, 260, 697 P.2d 80 (1985):

"Thus, if the basis for setting aside a judgment is, for example, fraud by an adverse party, a 60-260(b) movant can obtain relief *only if he files his motion not more than one year after judgment was entered*; the party cannot escape this time limit by seeking relief under 60-260(b)(6)." (Emphasis added.)

In this case, far more than a year has passed since the effective date of this divorce judgment, and any motion filed by Priscilla would not afford her any relief under that statute.

We have searched the record and the pleadings filed by Priscilla and find no allegation that Douglas was guilty of fraud or any overt bad faith in the way he dealt with his retirement plan.

We hold that the trial court did not err in denying Priscilla's motion as filed. Priscilla had every ability at the time of the divorce to protect herself from the situation with which we now deal. She failed to do so. She could have insisted that Douglas agree that he would not convert his retirement funds to disability funds. She did not do so. She could have provided that in the event the retirement

funds were converted to disability benefits that Douglas would be required to continue to pay her from other assets. She did not do so. We conclude that in the interest of justice and public policy, the finality of property divisions in a divorce decree is of significant importance. This decree has been final for over 4 years. Priscilla has shown us no valid reason to tinker with that decree.

In the long run, Priscilla was awarded an asset which has significantly declined in value. We do not believe that when an asset awarded under a divorce decree has subsequently declined in value, the party harmed thereby can reopen the divorce and demand additional property or more payments. In essence, this is what Priscilla seeks in this matter.

There are other decisions from a variety of states which deal with this issue. Some of those decisions deny the relief sought by Priscilla. See *Marriage of Jennings*, 91 Wash. App. 543, 958 P.2d 358 (1998); *Matter of Marriage of Reinauer*, 946 S.W.2d 853 (Tex. App. 1997). These decisions are all consistent with the positions we have taken in this opinion.

On the other hand, the relief sought by Priscilla has been granted by other state courts. In total, these constitute the majority of decisions in this type of case. In our opinion, the rationale used in many of those decisions is inconsistent with the law of this state.

In *Dexter v. Dexter*, 105 Md. App. 678, 661 A.2d 171 (1995), the ex-wife sued the ex-husband for breach of contract upon facts similar to this case. The court found the ex-husband to be guilty of breach of contract and awarded damages to the ex-wife. This method did not affect the terms of the original divorce decree. This was treated as a common-law, ordinary action for breach of contract and damages.

That theory, while somewhat attractive, has absolutely no support in this record on appeal. There is nothing to indicate that Douglas intentionally breached his settlement agreement. As we pointed out earlier in this opinion, a waiver of retirement benefits could have been the result of Douglas' action or action by the VA. We have no idea which scenario is correct, if either.

We have examined the motion filed by Priscilla and note that it does not allege that Douglas breached his contract; it simply states

as a fact that he did. The motion does not allege facts or dates and is not the sort of document that invites a reply.

We also do not believe that a motion filed in a divorce action is or can be construed as an action for breach of contract, at least not as alleged by Priscilla in her motion.

Finally, the trial court, in denying the motion, said:

"THE COURT: Mr. Shawver, I don't need to hear from you. I remember this case quite well. It's fresh on my mind. One of the cases you provided me, Mr. Alexander, specifically stated in [its] finding that the reason the Court disconsidered the US Supreme Court case ruling was because the parties had been ordered in this distribution a certain percentage and the Court said something to the effect. . . . I don't have it in front of me . . . [b]ut, something to the effect that they presumed that the person couldn't, by agreement, protect itself from this type of event where a subsequent request for increased disability would be made because it was a Court Order. In your case I have the fact that the Supreme Court Case was already decided. Parties by agreement entered into an order of that on its base [sic] only talked in terms of military pension and not in anyway restricted to disability to that amount or restricted in anyway his ability to apply. There was facts to support the fact that the respondent was already drawing some disability or that it was an issue and there's always the possibility it could increase and the parties by agreement then could take that back into account. It's not for the Court to interpose [its] determination in this case. Although there is, quite obviously, an effect that falls more heavily on your client in regard to the portion of this agreement. It is not worth (INAUDIBLE) to rewrite the agreement for the parties simply because one party suffers adverse consequence from that endorsement. So basically, on that, I took that into consideration. . . . It's clearly not an issue that's been decided in the State Court here in Kansas. I'm not sure how they would look at it, but as far as I'm concerned, and I remain convinced that the ruling was proper, and I'll deny the motion to reconsidered [sic]."

We agree with the comments of the trial court. In addition, we conclude the court was without authority to order Douglas to reinstate retirement pay that no longer existed. The allegations in the motion were not sufficient to institute an action for breach of contract or even to elicit a response from Douglas.

Affirmed.

GREEN, J., dissenting: The reasons why I am constrained to dissent may be briefly stated. K.S.A. 23-201(b) specifically includes retired military pay as property. In the case of Veterans Administration's (VA) disability compensation in lieu of retired military pay,

the rule established in *Mansell v. Mansell*, 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989), allows the retiree to unilaterally make an election that diminishes the former spouse's share of marital property. This is patently unfair to former spouses, especially when retirees have designated them as beneficiaries under their Survivors Benefit Plan, as in this case.

In supporting their argument why the trial court had no method of granting relief to Priscilla, the majority stated that "there is no guarantee by Douglas, by the Air Force, or by anyone else as to the length of time the retirement pay would exist." This statement is incorrect. Both Douglas and Priscilla agreed that her portion of Douglas' military retirement pay would be in accordance with 10 U.S.C. § 1408 (1994). As a result, the payments would continue in accordance with the terms of the court order, which was silent on this issue, or no later than the death of Douglas or Priscilla. See 10 U.S.C. § 1408(d)(4) (1994). Priscilla was also designated by Douglas as a beneficiary under his Survivor Benefit Plan. 10 U.S.C. § 1448(b) (1994) and 10 U.S.C. § 1450(f)(3) (1994). Clearly, Priscilla was expecting the flow of payments to continue after Douglas' death. Moreover, the cost of the Survivor Benefit Plan was deducted from Priscilla's portion of Douglas' military retirement benefit.

The majority also determined that it was problematic that the agreement contained "no set monthly amount which Priscilla was to receive." Nevertheless, under U.S.C. § 1408(a)(2)(C) (1994), a court order dividing retired pay as a property division may be expressed in either dollars or as a percentage of disposable retired pay. Here, the division of retired pay was expressed as a percentage. Under the percentage method, Priscilla would have benefited from any cost of living increase in the military retirement pay occurring after the divorce. On the other hand, if Priscilla's portion of Douglas' retirement benefit had been set forth as a specified monetary amount, she would not have received any cost of living increases.

The trial court decree gave Priscilla a vested property interest in Douglas' military retirement benefit. Priscilla's interest in the retirement benefit was analogous to a life estate in property. With

her portion of the retirement benefit, coupled with the survivor's benefit, Priscilla would have received monthly income during her lifetime. Nevertheless, when Douglas converted the retirement pay to 100 percent disability pay, he canceled her survivor's benefit for the retirement pay. Priscilla lost not only income during Douglas' life but also after his death.

No section of 10 U.S.C. § 1408 (1994) requires a court to ignore or modify its original decree which properly divided the retirement benefits due to a later change in the disability rating. In fact, 10 U.S.C. § 1408(e)(6) (1994) states:

"Nothing in this section shall be construed to relieve a member of liability for the payment of alimony, child support, or other payments required by a court order on the grounds that payments made out of disposable retired pay under this section have been made in the maximum amount permitted under paragraph (1) or subparagraph (B) of paragraph (4). Any such unsatisfied obligation of a member may be enforced by any means available under law other than the means provided under this section in any case in which the maximum amount permitted under paragraph (1) has been paid and under section 459 of the Social Security Act (42 U.S.C. 659) in any case in which the maximum amount permitted under subparagraph (B) of paragraph (4) has been paid."

Although 10 U.S.C. § 1408(e)(1) (1994) prohibits a state court from awarding a nonmilitary spouse a right to collect more than 50 percent of the disposable retired pay, subsection 10 U.S.C. § 1408(e)(6) (1994) allows a state court to use the retiree's other assets when the retirement benefits will not satisfy the nonmilitary spouse's share of the marital property. The state court can order the retiree to pay directly to the nonmilitary spouse the amount of the deficiency or issue garnishments or liens on other assets.

Though the trial court was powerless to divide Douglas' VA disability compensation, the trial court could have looked to other financial assets awarded to Douglas when the divorce was granted. I would reverse and remand with directions to award Priscilla the amount of unpaid arrearages and monthly income for the retirement pay.