[As amended by order of the Supreme Court October 5, 1999.]
Petitioner Karen Rae Jennings seeks review of a decision of the Court of Appeals, Division II, which reversed and remanded to the Thurston County Superior Court for reinstatement of a decree of dissolution which granted Petitioner as her community share one-half of her former husband's unliquidated monthly military retirement benefits which was significantly reduced when a substantial portion of the military retirement benefits was allocated by the Department of Veterans Affairs for disability benefits not subject to division in a marital dissolution. We granted review. We reverse.
 QUESTION PRESENTED
The question presented in this case is whether the Thurston County Superior Court properly modified its decree of dissolution under Court Rule (CR) 60(b)(11) because the portion of military retirement benefits awarded to a wife as *Page 614 
her community share of her husband's unliquidated military retirement benefits was significantly reduced when a substantial portion of the military retirement benefits payable to her former husband was allocated to disability benefits not subject to division in a marital dissolution.
 STATEMENT OF FACTS
Petitioner Karen Rae Jennings and Respondent Michael Kevin Jennings were married July 1, 1967 in Spokane, Washington and separated on May 15, 1989.[1] A trial for dissolution of their marriage was held on August 8, 1990 before the Honorable Paula Casey in the Thurston County Superior Court.[2] Judge Casey signed a decree of dissolution of marriage[3] on March 26, 1992 which characterized as community property and divided Respondent's military retirement benefits between the parties as follows:
3.3 PROPERTY TO BE AWARDED THE HUSBAND.
 The husband is awarded as his separate property the following property:
. . . .
 One Thousand Thirty Eight dollars ($1038) per month from his monthly retirement benefit from the United States Military.[4]
3.4 PROPERTY TO BE AWARDED THE WIFE.
 The wife is awarded as her separate property the following property:
. . . .
 The wife shall also be entitled to Eight Hundred Thirteen dollars ($813) per month of the Petitioner's military retirement. The wife's share of the community interest of the *Page 615 
husband's military retirement portions out to a monthly payment of Eight Hundred Thirteen dollars and Fifty cents ($813.50) per month. Said payment shall be made directly to the wife commencing with the month of September, 1990;[5]
. . . .
3.14 DIVISION OF RESPONDENT'S MILITARY RETIREMENT
 The military retirement pay presently being received by the Respondent is a marital asset to be divided by the Court as property. The parties were married for the entire length of the service member's active duty and the Petitioner is therefore entitled to full medical, commissary and exchange privileges. The Petitioner is entitled to fifty percent (50%) of the gross retirement pension and shall be paid the sum of not less than Eight Hundred Thirteen dollars and Fifty cents ($813.50) per month commencing with the month of September, 1991. Said allotment of Eight Hundred Thirteen dollars and Fifty cents ($813.50) per month shall be paid directly to her from the Army Finance Center under the provisions of the Uniformed Services Former Spouses Protection Act and further redefined by PL 101.510. The Petitioner will receive fifty percent (50%) of the gross retirement pay and she should be entitled to a like percentage of the withholding tax credit, as well as cost of living adjustments (COLAS). The portion of the retirement pay waived by the Respondent in order to receive disability compensation from Veteran's Affairs, is not divisible by the Court and as such should be awarded to the Respondent as his sole and separate property under provisions of Federal Law.[6]
After the decree of dissolution was granted, the Department of Veterans Affairs (formerly Veterans Administration) determined Respondent's disability had worsened and changed his disability status.[7] The Department of Veterans Affairs then increased Respondent's disability benefits from $318.00 to $2,285.00 per month and decreased his retirement benefits from $2,139.00 to $272.90 per month under *Page 616 
applicable government regulations.[8] Respondent also began receiving Social Security disability benefits in the amount of $1,200.00 per month for total monthly income of $3,757.90.[9]
The pertinent portions of the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (a)(4)(B) and (6), reads:
 (4) The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which
. . . .
 (B) are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court-martial or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38;
. . . .
 (6) The term "spouse or former spouse" means the husband or wife, or former husband or wife, respectively, of a member who, on or before the date of a court order, was married to that member.
Section 405 (c)(1) reads:
 (c) Authority for court to treat retired pay as property of the member and spouse.(1) Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. A court may not treat retired pay as property in any proceeding to divide or partition any amount *Page 617 
of retired pay of a member as the property of the member and the member's spouse or former spouse if a final decree of divorce, dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse.
Under the Wartime Disability Compensation Act, 38 U.S.C. § 1110, and the Peacetime Disability Compensation Act, 38 U.S.C. § 1131, disability payments are authorized.
 For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service . . . the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs.
These are the disability sections referred to in 10 U.S.C. § 1408
(a)(4)(B). The language of § 1110 is identical to the language of § 1131 except one includes the words "during a period of war" and the other includes the words "during other than a period of war" (omitted from the quoted text by ellipses).
Because of the reduction in Respondent's monthly retirement benefits, Petitioner's monthly payment from that source was thus reduced from $813.50 to $136.00 per month.[10] After this significant decrease, Petitioner filed a show cause motion requesting the trial court to either (1) vacate the decree of dissolution under CR 60(b)(1), 60(b)(3), 60(b)(9) and 60(b)(11); (2) modify the decree to provide *Page 618 
Petitioner with maintenance payments equal to one-half of Respondent's disability payments for as long as he receives disability payments; or (3) clarify the decree to require Respondent to pay Petitioner no less than $813 per month.[11]
In the original decree of dissolution dated March 26, 1992 the trial court made other dispositions which included household furnishings, the family residence and real property, life insurance policies, checking or savings accounts, profit-sharing rights and interest, Individual Retirement Accounts and child support. The court awarded Petitioner spousal maintenance in the amount of $250.00 per month from September 1, 1990 to September 1, 1991. Additionally, Petitioner was retained as irrevocable beneficiary of a Survivor Benefit Program initiated upon Respondent's retirement, with Petitioner assuming responsibility for premiums after two years.[12]
Interim orders were signed on December 8, 1994 and May 4, 1995 on Respondent's motion for clarification by Commissioner Christopher H. Wickham relating to the Survivor Benefit Program.[13]
In ruling on Petitioner's show cause motion, the trial court on June 5, 1996 signed an order which read:[14]
 THIS MATTER having come before the court pursuant to the Petitioner's motion to vacate the Decree of Dissolution of Marriage, and the court having reviewed the records and files dherein, and having heard the arguments of counsel, hereby finds that there are extraordinary circumstances in this case which justify setting aside the original Decree of Dissolution of Marriage pursuant to CR 60 (11). It is therefore
 ORDERED that the original Decree of Dissolution of Marriage shall be set aside insofar as it relates to the division of Respondent's retirement. Petitioner shall continue to receive one-half of Respondent's military retirement and be responsible *Page 619 
for payment of any SBP premiums. Respondent shall pay to Petitioner non-modifiable compensatory spousal maintenance in an amount which represents one-half* of Respondent's total monthly compensation for disability and retirement, less $547; provided that Petitioner's maintenance amount shall be reduced by military retirement actually received by Petitioner monthly and the SBP monthly premium. At the time of hearing, the maintenance amount is $746 per month. (Petitioner is presently receiving $136 military retirement monthly and is responsible for an SBP premium of $178 monthly.) This maintenance shall begin effective November 1995 and shall survive the Petitioner's remarriage. It is further
 ORDERED that the Respondent shall contribute $500 towards the Petitioner's attorney fees. It is further
 ORDERED THAT EITHER PARTY MAY PRESENT Findings of Fact and Conclusions of Law to support this order after this date.
DONE IN OPEN COURT this 5th day of June, 1996.
s/Paula Casey, Judge
On July 29, 1996 the trial court signed Amended Findings of Fact and Conclusions of Law which read:[15]
 THIS MATTER having come on before the court on January 4, 1996, February 8, 1996, and June 5, 1996 upon the Petitioner's request for entry of an order vacating the Decree and establishing spousal maintenance, and the Petitioner being present with her attorney, FORREST WAGNER, and the Respondent being present with his attorney, JEROME L. BUZZARD, and the court having listened to the argument of counsel, and examined the matters on file herein, now therefore the Court enters the following:
 I. FINDINGS OF FACT A. A Decree was entered in this matter on the 26th day of March, 1992. *Page 620 
 B. Under the terms of the Decree entered herein, the Court divided the Respondent's military retirement and awarded Petitioner one half of the military retirement which equaled $813.50 per month at the time of the decree.
 C. At the time of the entry of the Decree, the Respondent was receiving VA disability benefits in the amount of $318 a month. Respondent was receiving military retirement benefits in the amount of $2,139.
 II. CONCLUSIONS OF LAW A. The Court has jurisdiction over the parties and the subject matter.
 B. As a result of the Veteran's Administration finding that the Respondent's disability had worsened and the resulting decrease in the amount of Respondent's retirement pay received by the Petitioner, there are extraordinary circumstances requiring a vacation of the Decree of Dissolution under the provisions of CR 60b(11).
 C. Because the property division which originally gave Petitioner one half of Respondent's military retirement has been reduced from $813 a month to $136 a month, an award of compensatory spousal support is appropriate.
 D. Compensatory spousal support for the Petitioner is established at an amount equal to one half of the combined disability and retirement pay received by the Respondent. This spousal support shall be reduced by the following amounts: The amount of Respondent's retirement pay actually received by the Petitioner; $318 representing the amount of the original disability income of Respondent, plus any cost of living adjustment applicable thereto; the amount of any survivor benefit premium which the Decree required Petitioner to pay but which is deducted from Respondent's retirement pay. By way of clarification and example, the above calculation and deductions results in a current monthly award of spousal support to Petitioner of $876.
 E. Any change in the amounts utilized herein, as a result of cost of living increases, shall require a recalculation of the *Page 621 
support using the methodology explained in the June 5, 1996 order. These findings and conclusions shall not change in any way the order previously entered. Based upon the foregoing Findings of Fact and Conclusions of Law, the Court has entered an Order dated June 5, 1996.
DONE IN OPEN COURT this 29th day of July, 1996.
s/Paula Casey, Judge
The Court of Appeals reversed the trial court and remanded the case for reinstatement of the original decree of dissolution dated March 26, 1992.[16] Petitioner then sought review by this Court which was granted on February 2, 1999.
 DISCUSSION
In a marriage dissolution, disposition of the parties' property is governed by RCW 26.09.080 which provides:
 In a proceeding for dissolution of the marriage, legal separation, declaration of invalidity, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
(1) The nature and extent of the community property;
(2) The nature and extent of the separate property;
(3) The duration of the marriage; and
 (4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse with whom the children reside the majority of the time.
(Emphasis added). *Page 622 
Under RCW 26.09.170 the court may modify any decree "respecting maintenance or support," but provisions as to property dispositions "may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state."
This case involves an ambiguous disposition in a decree of dissolution. When the Department of Veterans Affairs authorized the change in Respondent's disability status, it had a significant impact upon the monthly military retirement payments then being received by Petitioner and Respondent as equal distribution of community property under the July 26, 1992 dissolution decree. The trial court considered the unliquidated military retirement a community asset acquired during the parties' twenty-two year marriage. The court made what it then considered an equitable distribution of that asset. But after the decree, Respondent's disability benefits were increased from $318.00 to $2,285.00 per month,[17] while his retirement benefits were decreased from $2,139.00 to $272.90 per month.[18] Respondent was required to execute a waiver to accomplish this change. As a consequence, Petitioner's monthly payment from her former husband's military retirement under the dissolution decree was reduced from $813.50 to $136.00.[19]
Disability benefits are not subject to division in a marriage dissolution, but retirement benefits are.
Under the Uniformed Services Former Spouses' Protection Act,[20] disposable retired military pay is subject to division as community property in a dissolution proceeding in Washington.[21] The United States Supreme Court in 1989 *Page 623 
ruled in Mansell v. Mansell[22] that military retirement pay is subject to division contrary to its prior decision in McCarty v. McCarty.[23] In Mansell the Court concluded:
 Section 1408(c)(1) of the {Former Spouses' Protection} Act affirmatively grants state courts the power to divide military retirement pay, yet its language is both precise and limited. It provides that "a court may treat disposable retired or retainer pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." § 1408(c)(1). The Act's definitional section specifically defines the term "disposable retired or retainer pay" to exclude, inter alia, military retirement pay waived in order to receive veterans' disability payments. § 1408 (a)(4)(B). {FN9} Thus, under the Act's plain and precise language, state courts have been granted the authority to treat disposable retired pay as community property; they have not been granted the authority to treat total retired pay as community property.[24]
Because of the dramatic reduction in the monthly payments Petitioner was receiving from her former husband's military retirement as her one-half share of a community asset under the dissolution decree, she brought a show cause motion in the Thurston County Superior Court which had granted the original decree in 1992. The trial court, the Honorable Paula Casey, determined there were extraordinary circumstances under CR 60(b)(11) for Svacating and modifying" the original decree.
Court Rules (CR) 60(b)(1) and (11) provide:
 (b) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgement, order, or proceeding for the following reasons: *Page 624 
 (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
. . . .
 (11) Any other reason justifying relief from the operation of the judgment.
The trial court at a hearing on February 29, 1996 concluded the intent of the original decree was to provide Petitioner "one half of the retirement which at the time of the 1992 decree paid $2,667.00 per month."[25] Judge Casey then stated that Petitioner should be assured of "one half of 2667 minus 547, regardless of what the future division is between disability and retirement" as maintenance less $178.00, less $136.00, for a monthly total of $746.00.[26] The Court of Appeals, in reversing the trial court, remanded for reinstatement of the March 26, 1992 decree[27] and concluded "{Petitioner} Karen Jennings has shown only that one asset awarded to her has declined substantially in value. This is not an `extraordinary circumstance' within the meaning of CR 60 (b)(11)."[28] The court, the Honorable David H. Armstrong writing, characterized the reduction in the amount Petitioner was receiving from Respondent's military retirement pension as a "post-decree change in the value of assets" which it concluded was not a sufficient basis for vacating the decree.[29] In dissenting to the opinion, the Honorable J. Dean Morgan suggested the trial court could not vacate its prior judgment under CR 60, nor modify it to grant Petitioner maintenance, but could instead, under Petitioner's motion, clarify the judgment.[30] *Page 625 
We do not agree with the Court of Appeals. Nor do we fully agree with the suggestion by Judge Morgan in his dissent. We do agree, however, that there were extraordinary circumstances in this case which justified remedial action by the trial court to overcome a manifest injustice which was not contemplated by the parties at the time of the 1992 decree. Although Respondent was required to waive retirement payments for transfer to disability payments, there is no evidence in the record to suggest his waiver in this case constituted a unilateral effort to deprive Petitioner of her share of the community assethis military retirement awarded in the dissolution.
When a decree is ambiguous it can be "subject to a declaratory action to ascertain the rights and duties of the parties."[31]
Paragraph 3.14 of the March 26, 1992 decree of dissolution awarded Petitioner fifty percent of Respondent's gross military retirement benefits specifically stated in the amount of not less than $813.50 per month. But the decree in paragraph 3.3 awarded Respondent $1,038.00 monthly from his military retirement. The variation of $224.50 is not fully explained in the record. Thus, based on the figures in the original decree, it is not readily apparent whether Petitioner was in fact awarded one-half of Respondent's gross military retirement benefits or whether she was granted absolutely a judgment against Respondent for $813.50 per month which the court chose to have paid to her direct from Respondent husband's monthly military retirement benefits.
In reviewing the order signed by the trial court on June 5, 1996 and the findings of fact and conclusions of law signed on July 29, 1996, we conclude the trial court did not abuse its discretion in clarifying the original decree of dissolution under RCW 26.09.170 and the trial court could reasonably conclude the drastic change in the status and amount of the monthly military retirement payments to *Page 626 
Respondent constituted an "extraordinary circumstance" under CR 60(b)(11). The inconsistencies in the mathematical computations reinforce ambiguity, but the intent of the trial court is nevertheless evident: to distribute to each of the parties one-half of the community asset identified as Respondent's military retirement which is unliquidated but payable monthly for the remainder of Respondent's life.
In referring to payments to Petitioner in the order signed on June 5, 1996 as "non-modifiable compensatory spousal maintenance," the court was in error, but that error is harmless in the context of the total order. It should have been designated instead as merely "compensatory spousal maintenance." That portion of the order would then read
 Respondent shall pay to Petitioner compensatory spousal maintenance in an amount which represents one-half of Respondent's total monthly compensation for disability and retirement, less $547; provided that Petitioner's maintenance amount shall be reduced by military retirement actually received by Petitioner monthly and the SBP monthly premium. The maintenance payments shall survive Petitioner's remarriage.
(Emphasis added.)
While the net figure stated in the order is slightly higher, under the formula used by the trial court Petitioner is entitled to a net monthly payment of not less than one-half of the $2,667.00 received by Respondent for retirement and disability less $547.00, for a balance of $2,120.00. This divided by two is $1,060.00. Applying this $1,060.00 to the award to Petitioner less $136.00 less $178.00 gives a net balance of $746.00. We conclude the result reached by the trial court was fair and equitable and within its authority.
The trial court in the March 26, 1992 dissolution decree appropriately made a disposition which was intended to equally divide the two significant community assets of the parties: the equity in the family residence (approximate *Page 627 
value of $32,000.00), awarding the residence to Petitioner Karen Rae Jennings and awarding a lien of $16,000.00 to Respondent Michael Kevin Jennings; and one-half of Respondent's unliquidated military retirement to each party, the pension then being paid in monthly installments of at least $2,139.00 for the remainder of Respondent's life. At the time of the decree, it was reasonable for the court to expect the $813.50 payable to Petitioner would continue to be paid from that source for the remainder of Respondent's life.
Neither the court nor the parties anticipated at the time of the 1992 decree that, through transfer of pension benefits to disability benefits, the monthly retirement payments to Respondent would be reduced to $272.90, with the consequence that the $813.50 payment to Petitioner would be reduced to $136.00 per month. Regardless of the reasons, the result was fundamentally unfair because it deprived Petitioner of her entitlement to one-half of a substantial community asset with her receiving $677.50 per month less than the amount awarded her by the court.
It was therefore appropriate for the trial court, in ruling on the motion by Petitioner for modification or clarification, to devise a formula which would again equitably divide the community assets without requiring the monthly amount payable to Petitioner to be paid direct from the Respondent's military retirement. The amended order dated June 5, 1996, while still somewhat ambiguous, nevertheless, along with the amended findings of fact and conclusions of law dated July 29, 1996, states that Petitioner Karen Ann Jennings is entitled to a specified monthly payment as her distributive share of one-half the community assets accumulated by the parties during their marriage. Those assets are principally the family residence (awarded to Petitioner with a lien of $16,000.00 to Respondent) and the unliquidated military retirement pension. It is not questioned that the monthly retirement payments for which Respondent Michael Kevin Jennings became *Page 628 
eligible upon his retirement from the military constituted a community asset subject to division in a dissolution proceeding in this State. Under the circumstances, it is equitable for the trial court to impose upon Respondent a direct obligation to pay Petitioner $746.00 per month as her share of a significant community assetthe military pensionwithout violating the federal prohibition against division of disability benefits.
We therefore reverse the Court of Appeals and affirm the amended order of the Thurston County Superior Court dated June 5, 1996.
 SUMMARY AND CONCLUSIONS
In the 1992 decree of dissolution of the marriage of Petitioner Karen Rae Jennings and Respondent Michael Kevin Jennings, the trial court characterized Respondent's military retirement benefits as community property and from it ostensibly awarded Petitioner fifty percent in the amount of not less than $813.50 per month (allowing deductions of $136.00 and $178.00) and awarded Respondent $1,038.00 per month as his share of that asset. These figures were not mathematically precise.
After that decree the Department of Veterans Affairs increased Respondent's disability benefits and reduced his gross monthly military retirement benefits from $2,139.00 to $272.90. As a consequence, direct monthly payments to Petitioner from the military pension were reduced from $813.50 to $136.00. After this change and with Social Security disability benefits of $1,200.00 per month, Respondent's monthly income then totaled $3,757.90.
Upon a motion by Petitioner the trial court in 1996 concluded that extraordinary circumstances existed under CR 60(b)(11) to vacate and amend the 1992 decree only as it related to division of Respondent's retirement benefits. In an amended order dated June 5, 1996 the court awarded Petitioner as "non-modifiable compensatory spousal maintenance" one-half of Respondent's total monthly *Page 629 
compensation for disability and retirement of $2,667.90 less $547.00 or $2,120.90. This divided by two is $1,060.45. Subtracting $136.00 and $178.00 gives a balance of $746.45. The amended order states a monthly balance of $876.00 to Petitioner for spousal support, but calculation under this formula results instead in a balance of $746.45. This award more properly should be characterized as "compensatory spousal maintenance." The Court of Appeals, Division II, reversed the trial court and remanded for reinstatement of the 1992 decree.
Under current Federal law, military retired pay is considered community property subject to distribution in a marital dissolution in Washington, but military disability benefits are not subject to distribution. The trial court otherwise has authority to make a just and equitable distribution under RCW26.09.080. We interpret the June 5, 1996 amended order as imposing upon Respondent a direct obligation to pay Petitioner as compensatory spousal maintenance the sum of $746.00 per month so long as Respondent is entitled to military pension payments or disability payments or both.
We reverse the decision of the Court of Appeals, Division II, which reversed the Thurston County Superior Court and remanded for reinstatement of the original March 26, 1992 decree of dissolution. In consequence, we affirm the June 5, 1996 amended order of the Thurston County Superior Court awarding compensatory spousal maintenance to Petitioner Karen Rae Jennings.
GUY, C.J., JOHNSON, MADSEN, ALEXANDER, TALMADGE, SANDERS, and IRELAND, JJ., and KENNEDY, J. Pro Tem., concur.
After modification, further reconsideration denied October 5, 1999.
[1] Clerk's Papers at 5.
[2] Id. at 4.
[3] Id. at 15-21.
[4] Id. at 16.
[5] Id. at 16-17.
[6] Id. at 19-20.
[7] Id. at 67. The record does not indicate the nature of Respondent's disability nor in what manner it changed.
[8] Id. at 67. See Mansell v Mansell, 490 U.S. 581,109 S.Ct. 2023, 104 L.Ed.2d 675 (1989); See also10 U.S.C. § 1408(a)(4)(B). Respondent was required to waive retirement benefits in favor of allocation to disability benefits.
[9] Id. at 67. The record contains no details concerning Respondent's military retirement and disability benefits except that he is eligible to receive them and receives monthly payments. See generally 10 U.S.C.A. § 3911, 3914, 3917,3918, 3925 and 3929.
[10] Clerk's Papers at 67.
[11] Id. at 33.
[12] Clerk's Papers at 4-20.
[13] Clerk's Papers at 23-28.
[14] Clerk's Papers at 56-57.
[15] Clerk's Papers at 66-68.
[16] Marriage of Jennings, 91 Wn. App. 543, 958 P.2d 358
(1998), review granted, (1999).
[17] Clerk's Papers at 67.
[18] Id.
[19] Id.
[20] 10 U.S.C. § 1408.
[21] 10 U.S.C. § 1408(c)(1) in response to McCarty v. McCarty, 453 U.S. 210, 101 S. Ct 2728, 69 L.Ed.2d 589 (1981), which held that military retirement benefits could not be considered in property dispositions in divorce or dissolution cases.
[22] 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).
[23] 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).
[24] Mansell v Mansell, 490 U.S. 581, 584-85, 109 S.Ct. 2023,2026, 104 L.Ed.2d 675 (1989) (Footnotes omitted.); See also Marriage of Kraft, 119 Wn.2d 438, 447-48, 832 P.2d 871
(1992).
[25] Reporter's Transcript at 10, 12 and 18.
[26] Id. at 19; See Clerk's Papers at 69-70. Despite contradictory figures used by counsel and the court, this formula is mathematically correct with a base net amount of $746.00 instead of $813.00: $2,667.00 $547.00 2 = $1,060.00. $1,060.00 $136.00 $178.00 = $746.00.
[27] Jennings, 91 Wn. App. at 549.
[28] Id. (Footnote omitted.)
[29] Id.
[30] Id. at 551 (Morgan, J., dissenting).
[31] Byrne v. Ackerlund, 108 Wn.2d 445, 453, 739 P.2d 1138
(1987). *Page 630