188 P.3d 529 (2008)
In re MARRIAGE OF Lloyd Russell MICHAEL, Petitioner, and
Ute Albertine Michael, Respondent.
No. 35564-7-II.
Court of Appeals of Washington, Division 2.
July 15, 2008.
*530 L. Carla Austin, Attorney at Law, Federal Way, WA, for Appellant.
Philip A. Dunlap, McGoran & Associates PS, Federal Way, WA, for Respondent.
Ute Albertine Michael, pro se.
QUINN-BRINTNALL, J.
¶ 1 Lloyd Michael appeals the trial court's grant of Ute Michael's petition to vacate or modify their decree of dissolution and spousal support order. Lloyd[1] argues that the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. 1408, prevents the award of military disability benefits to a spouse in a dissolution, whether the extent of the military spouse's disability is known at the time of the dissolution or becomes apparent at a later time. Because the trial court relied on In re Marriage of Jennings, 138 Wash.2d 612, 980 P.2d 1248 (1999), and the law has since undergone substantial change, we reverse and remand for the trial court to consider whether, in light of 10 U.S.C. 1414 and Ute's failure to correctly move to modify her dissolution decree in 1984, Lloyd's conversion of his retirement pay to disability pay after more than 20 years is an extraordinary circumstance under CR 60(b)(11).

FACTS
Factual Background
¶ 2 Lloyd and Ute dissolved their marriage in 1981. On April 13, 1984, the trial court entered an order modifying the original decree in light of the USFSPA, which made disposable retired military pay subject to division as community property in Washington dissolution proceedings. Jennings, 138 Wash.2d 612, 980 P.2d 1248. The order modifying the original decree awarded Ute 35.86 percent of Lloyd's service pay and 35.86 percent of any future increases in Lloyd's entitlement to her as separate property.
¶ 3 It is unclear from the record when Ute began receiving her share of Lloyd's military retirement benefits. Her declarations list the date as January 3, 2006, but on appeal, she argues that this was a "scrivener's error" and that she actually began receiving her payments in 1984. Br. of Resp't at 4. It appears that Ute began receiving her payment in 1984 because the 1984 modification states that Ute and Lloyd had been married for 17 of the 20 years Lloyd spent in active duty in the United States Army at the time of their dissolution. At the time of the modification, Lloyd did not have a disability and was not receiving disability pay. In March 2006, Lloyd began receiving military disability benefits. To receive his disability benefits, Lloyd had to sign a waiver decreasing his retirement benefits proportionately. As a result, Ute's portion of the retirement pay was reduced from $453.41 to $305.33.
¶ 4 Since Ute and Lloyd's dissolution in 1981, Ute has not remarried and supports herself financially. She has been receiving Social Security disability since 1995, because she has an occupational disability; Ute had carpel tunnel surgery in 1994, and suffers *531 from back problems. As a result of her disability, she is only able to work 17 hours per week as a "people greeter" at Wal-Mart. Clerk's Papers (CP) at 16. Ute pays $80 per month for prescription medication due to her disabilities. Ute argued that, because she lives paycheck to paycheck and is unable to work more, the loss of $148.08 per month in income causes her an extreme hardship that the trial court has the authority to ameliorate by modifying the 1984 modification.
Procedural History
¶ 5 On August 30, 2006, Ute moved to vacate or modify the 1984 decree to compensate for the loss of her portion of Lloyd's waived retirement benefits. Ute asked that Lloyd be required to pay her "non-modifiable compensatory spousal support in an amount equal to 35.86% of [Lloyd's] combined disability and retirement pay," including any future increases. CP at 1. On October 10, 2006, a pro tem Pierce County Superior Court commissioner denied Ute's motion, finding that the court did not have jurisdiction over Lloyd's military disability benefits. Ute moved for revision.
¶ 6 On October 20, 2006, a superior court judge reversed the commissioner's order and ordered Lloyd to pay "compensatory spousal support in an amount equal to 35.86% of the combined military disability and retirement pay received by [Lloyd] reduced by the amount of [Lloyd's] retirement pay actually received by [Ute] from [the Department of Finance and Accounting Service] for her share of retirement pay." CP at 29. The trial court further ordered Lloyd to make an allotment each month to pay the amount of compensatory spousal support, and it ordered him to pay Ute $1,184.64 for delinquent spousal support.[2] The trial court also awarded Ute attorney fees in the amount of $1,500.
¶ 7 Lloyd timely appeals.

ANALYSIS
2006 Order Modifying the 1984 Modification Order
¶ 8 Lloyd argues that the trial court erred when it awarded Ute 35.86 percent of his combined military disability and retirement pay because federal law prohibits division of military disability payments in dissolution proceedings. Ute acknowledges that the USFSPA prohibits the division of military disability pay between divorcing or divorced spouses, but she argues that the trial court did not divide Lloyd's disability pay; instead, she argues that the trial court simply took into account the "monetary impact" that Michael's reduction in retirement benefits had on Ute after he began receiving disability and used it as a basis to modify the 1984 order. We disagree.
¶ 9 Generally, we review a clarification of a dissolution decree de novo, but we review a modification of the decree for abuse of discretion. See Stokes v. Polley, 145 Wash.2d 341, 346, 37 P.3d 1211 (2001); In re Marriage of Holmes, 128 Wash.App. 727, 734-36, 117 P.3d 370 (2005); In re Marriage of Spreen, 107 Wash.App. 341, 346, 28 P.3d 769 (2001). A clarification merely defines the rights and obligations that the trial court already gave to the parties in their dissolution decree. In re Marriage of Christel, 101 Wash.App. 13, 22, 1 P.3d 600 (2000). In contrast, a modification extends or reduces those rights and responsibilities. Christel, 101 Wash.App. at 22, 1 P.3d 600 (citing In re Marriage of Rivard, 75 Wash.2d 415, 418, 451 P.2d 677 (1969)).
¶ 10 In a marriage dissolution, disposition of the parties' property is governed by former RCW 26.09.080 (1973) which provides:
In a proceeding for dissolution of the marriage . . . the court shall . . . make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
(1) The nature and extent of the community property;
(2) The nature and extent of the separate property;
(3) The duration of the marriage; and

*532 (4) The economic circumstances of each spouse at the time the division of property is to become effective.
¶ 11 Under former RCW 26.09.170 (1973), the trial court may modify any decree "respecting maintenance or support," but provisions as to property dispositions "may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state."
¶ 12 In In re Marriage of Mansell, 490 U.S. 581, 588-89, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), the Supreme Court held that "disposable military retirement pay" is subject to division in a dissolution, but the language of the USFSPA specifically defines "disposable" to exclude military retirement pay waived in order to receive veterans' disability payments.
¶ 13 Under the USFSPA and Mansell, military retirement benefits are considered community property subject to distribution in a marital dissolution in Washington; military disability benefits are not subject to distribution. See also Jennings, 138 Wash.2d at 629, 980 P.2d 1248. But courts may consider a spouse's entitlement to an undivided veteran's disability pension as one factor relevant to a just and equitable distribution of other property and as one factor relevant to maintenance. In re Marriage of Perkins, 107 Wash.App. 313, 322-23, 26 P.3d 989 (2001).
¶ 14 In Jennings, the original dissolution decree awarded the wife 50 percent of the husband's gross retirement pension, and the husband was ordered to pay her no less than $813.50 per month. 138 Wash.2d at 615, 980 P.2d 1248. At the time the trial court entered the decree, the husband had waived a certain amount of his retirement pay in favor of disability benefits and the trial court deemed his disability benefits to be his separate property under the provisions of the USFSPA. Jennings, 138 Wash.2d at 615, 980 P.2d 1248. After the trial court entered the decree, the Department of Veteran's Affairs determined that the husband's disability had worsened and changed his disability status. Jennings, 138 Wash.2d at 615, 980 P.2d 1248. The department increased his disability benefits from $318 to $2,285 per month and decreased his retirement benefits from $2,139 to $272.90 per month. Jennings, 138 Wash.2d at 615, 980 P.2d 1248.
¶ 15 As a result, the wife's portion of the husband's retirement pay decreased from $813.50 to $136 per month. Jennings, 138 Wash.2d at 617, 980 P.2d 1248. Our Supreme Court upheld a modified maintenance award in which the husband was required to pay his wife "compensatory spousal maintenance in an amount which represents one-half of [the husband's] total monthly compensation for [military] disability and retirement" because the drastic change in the status and amount of the monthly military retirement constituted an "extraordinary circumstance" under CR 60(b)(11). Jennings, 138 Wash.2d at 625-26, 980 P.2d 1248.
¶ 16 Here, the trial court relied on Jennings when it granted Ute's motion to modify the 1984 dissolution order. But since Jennings, the law has undergone substantial changes and Jennings no longer controls. Under 10 U.S.C. § 1414, a retired and disabled service member's retirement benefits, waived to gain disability benefits, are gradually restored over a nine-year period. At the end of the nine years, Lloyd will be entitled to his entire disability benefit as well as the full amount of his retirement benefits; this "phase-in" will ultimately restore Ute's benefits entirely.
¶ 17 As a result, the trial court erred when it relied on Jennings without considering the substantial changes in the law. Because Ute's benefits will be entirely restored after nine years, and in view of the fact that it was possible that Lloyd's retirement benefits could have been reduced if he began receiving disability benefits at the time of the 1984 modification and Ute failed to take steps to protect herself at that time, we reverse and remand to the trial court for reconsideration as to whether this reduction constitutes "extraordinary circumstances" under CR 60(b)(11).
Attorney Fees
¶ 18 Both parties request attorney fees on appeal, but they fail to offer any argument or *533 citation to authority and, thus, we do not consider their requests. See RAP 10.3(a)(6); Am. Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 7, 802 P.2d 784 (1991).
¶ 19 We reverse and remand.
We concur: VAN DEREN, C.J., and PENOYAR, J.
NOTES
[1] We use first names for clarity.
[2] The delinquent spousal support was for the period of March 2006 through October 2006.