# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | No. 52455-4-II |
| GLENNA JUNE BRINKER, | |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| JOHN PAUL BRINKER, | |
| Appellant. | |

MELNICK, J. — John Brinker, a self-represented litigant, appeals the trial court's order clarifying a domestic relations order (DRO). The clarifying order compensated John's former spouse, Glenna Brinker,[1] for underpayments of her portion of a retirement annuity.

We affirm.

## FACTS

### I.     DRO

In 1997, the court dissolved John and Glenna's marriage. It issued a DRO that awarded Glenna approximately 31 percent of an annuity that John would receive from the Civil Service

---

[1] Since the parties have the same last name, we use the parties' first names to avoid confusion. We intend no disrespect.

Retirement System upon retirement. The Office of Personnel Management (OPM) received a copy of the DRO.[2]

In 2007, John retired and began receiving his annuity and Glenna began receiving payments pursuant to the DRO.

In 2011, the court determined that an error in the original DRO caused Glenna to receive smaller monthly payments from the OPM than she should have. The court executed an amended DRO to correct the error. It directed the OPM to add $500 a month to Glenna's prospective payments until the deficit had been made up. The order did not specify either the amount of the underpayment or the duration of the increased payment. The court ordered John to obtain an accounting from the OPM that would show what the OPM paid to John and Glenna. It wanted to determine the amount of underpayment and the number of months of additional increased payments that had to be made to satisfy the deficit.

II.     RULINGS

In 2018, John sought a determination from the court whether he had satisfied the underpayment. He had not obtained an accounting from the OPM. He told the court that he had tried but the OPM would not give him one. John and Glenna appeared before a Superior Court Commissioner where the following relevant colloquy occurred.

---

[2] The OPM's role is ministerial, it distributes annuity owed to federal employees and their former spouses based entirely on orders from state courts. UNITED STATES OFFICE OF PERSONNEL MGMT., RI 38-116, A HANDBOOK FOR ATTORNEYS ON COURT-ORDERED RETIREMENT, HEALTH BENEFITS AND LIFE INSURANCE UNDER THE CIVIL SERVICE RETIREMENT BENEFITS 4 (1997). Because "government plans" are exempt from the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq, the OPM does not accept qualified domestic relations orders (QDROs) from state courts. HANDBOOK at 5. Instead, it accepts court orders that are written in conformity with the OPM's regulations. A court order can affect several types of retirement benefits paid by the OPM. HANDBOOK at 5. The court determines the percent or fraction of the employee's annuity that the former spouse shall receive.

> THE COURT: What if I sign an order directing them to [send an accounting]?
>
> [John]: I don't think so. You're a state judge.
>
> THE COURT: So they just don't care, but they'll take my state order and divide the pension—
>
> [John]: Right.
>
> THE COURT: —pursuant to [Employee Income Security Act] ERISA?
>
> [Glenna]: What's ERISA?
>
> THE COURT: It's an Employment Division allowance that the federal government will recognize state orders. It elevates our state orders to a federal level in order to be able to divide pensions.
>
> [John]: I don't know if they follow ERISA.
>
> THE COURT: They have to, yeah. They have to.

Report of Proceedings (RP) (May 2, 2018) at 10.

John told the court that he had done his own calculations to determine the deficit. Glenna stated that she did not agree with John's calculations because "the court was supposed to figure it out and not [John]." RP (May 2, 2019) at 12.

The parties agreed that the court had the duty to determine whether the deficit had been satisfied, not the OPM. The parties also agreed that Glenna received underpayments from January 1, 2008 to March 31, 2012, a total of 51 months. John supplied the court with his calculations as to the number of months he should pay the additional $500 monthly payment to satisfy the deficit. The court stated several times that John should subpoena the OPM to obtain an accounting in order to determine the deficit. John asserted that the court could calculate the deficit without the accounting, or "check [his] math" instead. RP (May 2, 2019) at 20.

The court issued an order clarifying the June 2011 amended DRO. In so doing, it made calculations using the numbers from a notice of annuity adjustment letter sent to John by the OPM, and the amount that Glenna claims she had received during the period she was under paid. It calculated that Glenna should receive a total of 83 payments, at an additional $500 a month, to make up the error.

John sought a revision of the commissioner's decision under RCW 2.24.050. At the hearing, he argued that the commissioner had incorrectly calculated the deficit, and asked the court to adopt his calculation. The court entered an order denying John's motion for revision. It determined that "[t]he Respondent did not establish an adequate basis to revise the commissioner's Order Clarifying June 2011 Domestic Relations Order." Clerk's Papers (CP) at 7. John appealed.

ANALYSIS

I. LEGAL PRINCIPLES

On a revision motion, a judge reviews a commissioner's ruling de novo based on the evidence and issues presented to the commissioner. RCW 26.12.215; RCW 2.24.050; *In re Marriage of Moody*, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). When an appeal is taken from an order denying revision of a court commissioner's decision, we review the judge's decision, not the commissioner's. *In re Estate of Wright*, 147 Wn. App. 674, 680, 196 P.3d 1075 (2008). However, a revision denial leaves the action of the commissioner unchanged and constitutes an adoption of the commissioner's decision. *In re Dependency of B.S.S.*, 56 Wn. App. 169, 170-71, 782 P.2d 1100 (1989).

We review a declaratory order clarifying a property division for abuse of discretion. *In re Marriage of Jennings*, 138 Wn.2d 612, 625, 980 P.2d 1248 (1999). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds." *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). Discretion is abused when it is based on a misunderstanding of law. *Braam v. State*, 150 Wn.2d 689, 706, 81 P.3d 851 (2003).

RAP 10.3(a)(6) requires that an appellant state "[t]he argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." We do not consider conclusory arguments that are unsupported by citation to

4

authority. *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012). "'[P]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" *West*, 168 Wn. App. at 187 (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)).

Self-represented litigants are held to the same standards as attorneys and must comply with all procedural rules on appeal. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 308, 45 P.3d 1068 (2002).

II.     JOHN'S CALCULATION

John argues that the court erred by not accepting his determination of which month the additional $500 payments should end. He argues that as the moving party, he met his burden of proof by determining when the payments should end, and because Glenna had not offered her own calculation, she had not met her burden. We disagree.

John asked the trial court to determine whether he had fulfilled his obligation to make up the deficit in benefit payments. The 2011 DRO stated, "John Brinker is ORDERED to obtain data from the OPM . . . so that the court can determine the ending date of the payment." CP at 14. Therefore, his burden was not to determine the ending date, but to provide an accounting that would enable the court to make that determination. John failed to follow the court order; therefore, we reject his argument.[3]

III.    THE COURT'S CALCULATION

John argues that the court erred in calculating the total amount owed to Glenna because the court used incorrect numbers to make its calculation. He contends that the court incorrectly

---

[3] In addition, John has failed to articulate why the court must accept his calculations.

determined the monthly payment that Glenna received during the 51 months that she was under-paid. We disagree.

In order to perform an accurate calculation, the court needed John to provide an accounting from the OPM, which he failed to do. Without this information, the court relied on the information it had available. The decision was not based on untenable grounds because the court utilized information it obtained from the notice of annuity adjustment letter that John had received from the OPM. The decision was not based on untenable reasons. The reason the court used that information was because it was the only information the parties presented to the court on this issue. It had to make a decision based on the evidence presented. John failed to comply with the court order to present the data from the OPM. We conclude the court did not abuse its discretion.

IV.     UNDUE INFLUENCE

John argues that the deficit amounts to $31,365, rather than the $41,412 calculated by the court. He contends that the difference between the court's calculation and his calculation is due to the court being unduly influenced by Glenna's disability. He argues that the court's overestimation of the amount due was a result of reverse discrimination. We disagree.

There is no evidence in the record to support John's claim that the court was influenced by Glenna's disability, or that Glenna had a disability. Therefore, we reject this argument.

V.      MISSTATEMENT OF THE LAW

John argues that the trial court erred because the commissioner "did not properly understand the law involved."[4] Br. of Appellant 1. Therefore, the findings of fact are not supported by substantial evidence. This argument lacks merit and we reject it.

---

[4] During the hearing, the commissioner mistakenly stated that the ERISA applied to John's benefits.

A trial court can abuse its discretion if a decision is based on a misunderstanding of the underlying law. *Braam* 150 Wn.2d at706. Here, the commissioner mistakenly believed that ERISA would apply to an order sent to the OPM. ERISA does not apply to government plans. 29 U.S.C. § 1002(32). However, this misstatement is not relevant to this appeal and had no impact on the final decision.[5]

Therefore, we reject the argument.

VI.    TIME TO APPEAL

John argues that the trial court erred in its determination of the percentage that Glenna should receive of his retirement annuity in 2008. He argues the court awarded her more than she should have received because of her disability.

Litigants must file an appeal within "30 days after the entry of the decision of the trial court." RAP 5.2(a). The entry of the decision of the trial court on this issue was in 2008. It remained unchanged by subsequent order; therefore, the time to challenge the original order has passed. We reject this argument as untimely.

VII.    MISCELLANEOUS

John argues the trial court erred when it did not follow "Section 8346(a) of title 5 United States Code, a civil service pension is not assignable either in law or equity. Therefore the $500 payment should be terminated immediately." Br. of Appellant at 11. Finally, John argues the court erred in denying the motion for revision because it only performed a "cursory review" of his brief. Br. of Appellant at 11.

---

[5] John fails to explain how this misstatement affected the court's calculation. He also fails to explain the relevance of this misstatement.

John has failed to present a reasoned argument for either of these assignments of error. Both arguments are conclusory and without citation to authority or to the record, therefore we reject them. *West*, 168 Wn. App. at 187.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, C.J.

_____
Glasgow, J.