# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>MARIO ROBERT PELLEGRINI,<br><br>      Appellant,<br><br> and<br><br>LYNSEY NICOLE PELLEGRINI,<br><br>      Respondent. | No.  59952-0-II<br><br><br><br><br>UNPUBLISHED OPINION |

LEE, P.J. — Mario Pellegrini appeals the trial court's order on motion for clarification and motion for final parenting plan.  Mario[1] argues that the trial court's order improperly modifies, rather than clarifies, its previous final orders.  Lynsey requests attorney fees on appeal.  We affirm the trial court's order and deny Lynsey's request for attorney fees on appeal.

FACTS

On March 6, 2020, the trial court entered a parenting plan for Mario and Lynsey's two children, J.P. and C.P.  The parenting plan did not include any limitations on residential time for either parent.  The parenting plan established a 50/50 residential schedule with joint decision-making.

In 2021, both parties filed petitions to modify the parenting plan.  On January 26, 2022, the trial court found adequate cause to hold a trial on modifying the parenting plan.  On November 18,

---

[1]  Because Mario and Lynsey have the same last name, we refer to the parties by their first names for clarity.  We intend no disrespect.

following a 2-day trial, the trial court denied both petitions to modify the parenting plan, finding that the requested modifications were not in the children's best interests. The trial court specifically found the allegations in Mario's petition were not supported by the evidence and that Lynsey had not willfully withheld J.P. from Mario. The trial court also found that Mario had filed his petition to modify in retaliation for Lynsey filing a motion to modify and awarded Lynsey attorney fees based on the retaliatory filing.

Mario filed a motion for reconsideration challenging the trial court's findings that Lynsey did not willfully withhold the child and that his petition for modification was filed in retaliation.

On December 22, the trial court denied the motion for reconsideration without any additional findings.

In January 2023, the trial court held a review hearing. Based on the information presented at the review hearing, the trial court ordered that J.P. would reside with Mario until further order of the court. The trial court designated the specific date and time Lynsey was required to return J.P. to Mario's home. And the trial court made specific provisions for co-parent counseling and services for J.P. The trial court set another review hearing for March.

On February 6, a week after Lynsey was required to return J.P. to Mario's home, Mario filed a motion for contempt, alleging Lynsey refused to return J.P. and, instead, J.P. was living at Lynsey's parents' house. At the review hearing, the trial court deferred the issue of compliance with its prior order until the contempt hearing, which was set for a few days later, and entered an order prohibiting contact between Lynsey and J.P.

On March 6, the trial court found Lynsey in contempt for failing to return J.P. The trial court ordered Lynsey to serve 10 days in jail unless the child was returned to Mario that day. The trial court also ordered Lynsey to fully cooperate with all service providers in the case.

Following the next review hearing in May, the trial court ordered that J.P. reside with her grandparents until further order of the court. The trial court also limited Lynsey to supervised visitation with J.P. The trial court did not limit Mario's contact with J.P.

On November 29, Mario filed a CR 60 "Motion to Vacate Final Orders" based on "newly discovered evidence," specifically Lynsey's behavior since the modification trial. Clerk's Papers (CP) at 67, 74. Mario requested that the trial court "vacate the final orders in this case and grant the relief requested [in Mario's] petition to modify a parenting plan filed on December 13, 2021." CP at 74. Lynsey did not respond to the motion.

On January 19, 2024, the trial court granted the motion and ruled that the December 22 order denying reconsideration was "superseded" with two statements reversing specific factual findings the trial court had previously made in the order related to Lynsey's conduct and Mario's motivation in filing the petition to modify the parenting plan CP at 77. The January 2024 order also stated:

> The Court finds it is in the best interests of the children in this matter to reside primarily with Mario Pellegrini. Counsel for [Mario] is directed to liaise with [J.P.'s] attorney in the At Risk Youth matter to develop a concrete plan for [J.P.'s] reintegration in [Mario's] home. Reintegration is not an option left to the determination of the child.

CP at 78.

In March 2024, Mario filed a motion for a review hearing because J.P. had still not been reintegrated into his home. Mario alleged that J.P.'s case had been dismissed from the At Risk Youth program, she no longer had an attorney, and Lynsey continued to have contact with J.P. which was preventing her return to Mario's house. Mario requested clarification from the trial court on how to move forward. Lynsey responded, arguing that the March 2020 parenting plan should be the parenting plan currently in effect. Lynsey also proposed some "practical solutions"

3

such as requiring Mario to file a new petition to modify the parenting plan, ordering reunification counseling, and appointing an attorney for J.P. CP at 83. Finally, Lynsey requested clarification on whether J.P. was permitted access to social media and a court order allowing J.P. to get her driver's license. At the review hearing on Mario's motion, the trial court entered no orders related to J.P.'s residential schedule or the "practical solutions" identified by Lynsey because neither party had actually made any motion related to these issues.

On June 25, 2024, Lynsey filed a motion for clarification and for "orders on various issues." CP at 139. Lynsey requested the trial court clarify that the order on Mario's CR 60 motion related only to findings of bad faith and attorney fees, and that the CR 60 order did not alter any of the findings denying the petition for modification. Lynsey also asked the trial court to clarify which parenting plan and orders were currently in effect. Lynsey further requested that the trial court order the parties to engage in reunification counseling, appoint an attorney for J.P., allow J.P. to obtain her driver's license, and clarify whether J.P. was permitted to access social media. In response, Mario filed a motion for a final parenting plan.

At the hearing on the parties' motions, the trial court explained:

Well, at some level I—this is a case that doesn't have legal solutions. I remember in practice telling clients that the court can't parent. The court can't fix family dynamics. But I am faced with a motion and I do think clarification needs to be addressed.

And I am going to say at some level—well, let me back up. After a very contested trial—and I had many of them in [family] court for 18 months, and I retained jurisdiction on all the ones that I thought would—could derail. This is one of the very few cases that did not reset. Most of those high-conflict cases, after the trial there might have been one motion to address something. But this case, no matter what I did, I couldn't get this case reset.

I really had faith in the At-Risk Youth petition process. And maybe it's changed since I handled it last in 2019. But it also is a testament that there was a period at least where [J.P.] felt her voice was being heard and she wasn't trying to self-harm. And apparently now she is doing well in school.

4

However, I have two parents and the law that says both parents have a constitutional right to parent and so at some level [J.P.] can't just be in charge. Although I do worry about any ruling that might get [J.P.] off balance again. She is doing well in school. I am not happy about [C.P.'s] grades. I don't know what's going on there. But hopefully, you know, if we can get this case centered again I think both children would end up doing well.

So having said all that, on clarification the parenting plan that I anticipated that would go back into effect after [J.P.] got done with the At-Risk Youth plan was the parenting plan dated March 6, 2020 with a split residential schedule.

I still believe that if the parents could stop throwing, you know, not just stones but sometimes sharp objects at the other side that these kids would recenter and they would be fine. So the clarification, the parenting plan in effect is the March 6th, 2020 plan.

However; so then what do I know for sure? [J.P.] is going to say, I am not going. So I can't just leave it there. And I am very disappointed that [C.P.] isn't alternating weeks with Mom. I don't know the source of that. So that leaves me with how do I get this case recentered again? I can only hope that reunification counseling would get us recentered and keep the children stable and hopefully out of court.

I can't parent these children. But I feel like I am always getting motions requiring me to do things that I shouldn't have to even address such as driving and social media. But I am ordering reunification counseling.

1 Verbatim Rep. of Proc. (VRP) at 16-18. The trial court went on to discuss specific provisions related to splitting the cost of reunification counseling and address Lynsey's specific motions related to J.P.'s driver's licensing, social media, and request for an attorney. Toward the end of the hearing, Mario inquired about the trial court's prior findings that it was in the children's best interests to reside primarily with him. The trial court explained:

That is void because, again, I was going to reset this after the At-Risk Youth process. Right now it's the 2020 plan. So in my world, the best case scenario, [C.P.] would spend a week with Mom and [J.P.] would spend a week with Dad. But until the doctor does reunification counseling it's not going to work. I don't want either child derailed and I don't want you two attorneys coming to me for contempt.

So this order should also say any contempt regarding the 2020 parenting plan is, I guess, stayed until [the reunification counselor] does hopefully his magic.

1 VRP at 24-25.

5

On July 31, consistent with its oral ruling, the trial court entered its written order on motion for clarification and motion for final parenting plan. The trial court ordered:

1.  Effective immediate[ly], the March 6, 2020 parenting plan is in full force and effect. [Mario]'s motion for entry of a parenting plan is denied.

2.  Any orders predating this date in this cause number that contradict the March 6, 2020 parenting plan are hereby null and void and no longer carry the force of law and enforceable in any manner, including through motion for contempt.

CP at 269. The trial court also ordered that the parties immediately being reunification counseling. The trial court further ordered that J.P. could begin driver's education and obtain a driver's license provided she tested negative for all non-prescribed substances including marijuana and engaged in the ordered reunification counseling. And the trial court ordered that J.P. could have access to social media accounts, but J.P. had to provide the passwords to both parents. Finally, the trial court declined to appoint an attorney for J.P. unless the reunification counseling resulted in the need for additional litigation.

Mario appeals.

## ANALYSIS

Mario argues that the trial court's July 31 order exceeded the scope of its authority in a motion for clarification. We disagree.

### A.   LEGAL PRINCIPLES

Generally, we review a trial court's rulings dealing with the provisions of a parenting plan for an abuse of discretion. *In re Marriage of Christel and Blanchard*, 101 Wn. App. 13, 20-21, 1 P.3d 600 (2000). The trial court abuses its discretion if its decision is manifestly unreasonable or is based on untenable grounds or reasons. *Id*. at 21.

Further, we review clarification of a dissolution decree de novo, but we review a modification of the decree for an abuse of discretion. *In re Marriage of Michael*, 145 Wn. App. 854, 859, 188 P.3d 529 (2008). "A clarification merely defines the rights and obligations that the trial court already gave to the parties in their dissolution decree." *Id.*; *see also Christel*, 101 Wn. App. at 22. However, a modification "extends or reduces those rights and responsibilities." *Michael*, 145 Wn. App. at 859; *Christel*, 101 Wn. App. at 22.

"A permanent parenting plan may be changed in three ways: by agreement, by petition to modify, and by temporary order." *Christel*, 101 Wn. App. at 22. RCW 26.09.260 requires specific findings related to substantial change of circumstances in order for the trial court to make major or minor modifications to a parenting plan. RCW 26.09.260(1), (2), (5). Further, RCW 26.09.260 mandates that the trial court retain the residential schedule absent specific circumstances. RCW 26.09.260(2).

B.   PARENTING PLAN

Mario argues that the trial court exceeded its authority because the July 31 order improperly modified, rather than clarified, the trial court's January 2024 order. Specifically, Mario alleges that the January 2024 order modified the final parenting plan by finding that it was in J.P.'s best interests to reside with Mario, and therefore, the trial court modified the January 2024 order by reinstating the March 2020 parenting plan. In other words, Mario characterizes the January 2024 order as a final order establishing Mario as the full-time residential parent for J.P. We disagree.

Here, the trial court's January 2024 order was, at best, a temporary order related to the March 2020 parenting plan. The January 2024 order could not have been a permanent modification of the March 2020 parenting plan because there was no pending petition for modification before the trial court. Further, despite finding it is in J.P.'s best interests to reside with Mario, the January

2024 order neither makes any finding that would support major modification under RCW 26.09.260 nor vacates any of the trial court's findings denying the 2021 petitions for modification.

Moreover, the trial court's January 2024 order finding that it was in J.P.'s best interests to reside with Mario did not establish a new residential schedule. And, despite ordering Mario to work with J.P.'s attorney at the time toward reintegration, the January 2024 order did not specifically modify the prior order requiring J.P. to reside at Lynsey's parents' house until further order of the court. In fact, Mario recognized that the January 2024 order did not establish a new parenting plan or residential schedule because, in response to Lynsey's motion for clarification, Mario moved for the trial court to enter a new parenting plan.

In sum, the trial court's January 2024 order did not vacate the findings denying the 2021 petitions for modification, contained no findings that would authorize modification of the March 2020 parenting plan under RCW 26.09.260, and did not contain any specific residential provisions. Therefore, the finding in the January 2024 order was at best, a temporary order related to the March 2020 parenting plan.

Because the trial court's January 2024 order could have been no more than a temporary order related to the March 2020 parenting plan, the March 2020 parenting plan was the only parenting plan that defined the rights and responsibilities of the parties. Therefore, the trial court's July 2024 order identifying the March 2020 parenting plan as the parenting plan that was in effect simply stated the existing rights and obligations of the parties and was an appropriate clarification, rather than modification. The trial court did not err by clarifying that the March 2020 parenting plan was the effective parenting plan.

C.    OTHER ORDERS

Mario also argues that the trial court exceeded its authority in a motion for clarification by entering orders related to reunification counseling, J.P.'s driver's license, and J.P.'s social media. We disagree.

As an initial matter, Mario fails to recognize that Lynsey's motion was not exclusively a motion for clarification. Lynsey's motion not only specifically sought clarification regarding the status of the March 2020 parenting plan, but it also included motions for other orders related to disputed issues between the parties. Lynsey's motion was not related to simply clarification; therefore, we review the trial court's additional orders for an abuse of discretion. *Christel*, 101 Wn. App. at 20-21.

Here, the March 2020 parenting plan provided for joint decision making between the parties, including decisions regarding driver's licensing. However, the parenting plan did not contain any specific provisions dictating whether J.P. can participate in driver's education, obtain her driver's license, or use social media. Rather, the parenting plan contained provisions for dispute resolution that directed the parties to mediation or to return to the trial court.

Based on the record, it is obvious the parties were incapable of reaching any agreement on the course of action necessary to reintegrate J.P. into either parent's home, allow J.P. to get a driver's license, or guide J.P.'s use of social media. The trial court did not abuse its discretion by resolving these disputes when presented with motions asking that it do so.

D.    ATTORNEY FEES ON APPEAL

Lynsey requests attorney fees on appeal under RAP 18.9 for responding to a frivolous appeal. Alternatively, Lynsey requests attorney fees under RAP 18.1 and RCW 26.09.140, arguing that she has financial need and Mario has the ability to pay.

1.      Frivolous appeal

RAP 18.9(a) authorizes this court to award attorney fees to a party for responding to a frivolous appeal.  "An appeal is frivolous when the appeal presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9, *review denied*, 175 Wn.2d 1016 (2012).

Here, although Mario does not prevail in this appeal, the appeal was not so lacking in merit that there was no possibility of reversal.  Mario's appeal was not frivolous.  Accordingly, awarding Lynsey attorney fees as sanctions under RAP 18.9 is not warranted in this case.  We deny Lynsey's request for attorney fees under RAP 18.9.

2.      RCW 26.09.140

RAP 18.1 authorizes this court to award attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review."  RCW 26.09.140 provides:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or enforcement or modification proceedings after entry of judgment.
> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

Under RAP 18.1(c), when applicable law mandates consideration of the financial resources of the parties, the parties must file financial affidavits no later than 10 days prior to the date the case is set for consideration.

Here, Lynsey argues that she is entitled to attorney fees because she has a financial need and Mario has the ability to pay.  However, Lynsey failed to timely file financial affidavits that

10

would support her claim that she has a financial need. Accordingly, we deny Lynsey's request for attorney fees under RAP 18.1 and RCW 26.09.140.

CONCLUSION

We affirm the trial court's order and deny Lynsey's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, P.J.

We concur:

Glasgow, J.

Price, J.